UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KISCHE USA LLC,

               Plaintiff,

         v.

ALI SIMSEK, et al.,

             Defendants.

CASE NO. C16-0168JLR

ORDER ON MOTIONS TO
DISMISS

## I.   INTRODUCTION

Before the court are Defendant Kevin Costanza's motion to dismiss Plaintiff

Kische USA LLC's ("Kische") amended complaint (Costanza MTD (Dkt. # 54)) and

Defendants JD Stellar LLC, Ali Simsek, and Diane Walker's ("Stellar Defendants")

motion to dismiss Kische's amended complaint (Stellar MTD (Dkt. # 56)).  The court has

considered the motions, Kische's responses to the motions (Resp. to Costanza (Dkt.

# 57); Resp. to Stellar (Dkt. # 61)), Defendants' replies in support of their motions

(Costanza Reply (Dkt. # 60); Stellar Reply (Dkt. # 63)), the relevant portions of the

1    record, and the applicable law.  Being fully advised,[1] the court GRANTS Mr. Costanza's

2    motion and GRANTS in part and DENIES in part Stellar Defendants' motion.

3                              **II.    BACKGROUND**

4          This case involves allegations that former Kische employees—Mr. Simsek and

5    Ms. Walker—abused their positions to misappropriate Kische's assets and founded JD

6    Stellar, a competing business.  (*See* Am. Compl. (Dkt. # 53).)  Kische accuses Mr.

7    Costanza, its former attorney, of participating in this misconduct.  (*Id.*)

8          Kische "design[s] and import[s] fashionable clothing from manufacturers in

9    Turkey and [sells] them under the mark 'KISCHE' to prominent retailers in the U.S.,

10   including Nordstrom, T.J. Maxx, Marshalls, Ross[,] and others." (*Id.* ¶ 4.4.)  Mehmet

11   Uysal is the owner and sole member of Kische.  (*Id.* ¶ 4.3.)  Mr. Simsek and Ms. Walker

12   "served as managers and employees of [Kische] for over six years."  (*Id.* ¶ 4.6.)  On

13   February 8, 2010, Mr. Uysal updated Kische's Operating Agreement to delegate the

14   management of Kische's "day-to-day affairs to 'one or more Managers'" and appointed

15   Mr. Simsek as Kische's Chief Executive Manager.  (*Id.* ¶ 4.20.)  As Kische's Chief

16   Executive Manager, Mr. Simsek had limited authority because "Mr. Uysal's written

17   approval [was required] for a series of actions, including '[a]ny act, transaction, or

18   occurrence not in the course of [Kische's] ordinary business."  (*Id.* (quoting Uysal Decl.

19   (Dkt. # 43) Ex. 7 ("Operating Agreement") ¶ 4.3).)

20   //

21   ───────────────────

22          [1] No party requested oral argument, and the court determines that oral argument would not be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER- 2

1    Kische alleges that around late 2013, while still employed by Kische, Mr. Simsek

2    and Ms. Walker began improperly competing with Kische, including by (1) forming JD

3    Stellar, a competing company; (2) assigning one of Kische's registered

4    trademarks—"Marseille"—to JD Stellar using Mr. Costanza's services and without Mr.

5    Uysal's approval; (3) registering the trademark "Dantelle," which Kische alleges directly

6    competed with Kische, on behalf of JD Stellar; (4) dissuading Kische's customers from

7    doing business with Kische; (5) purposefully delaying Kische's payments to

8    manufacturers and vendors; (6) stealing furniture, equipment, and clothing from Kische;

9    (7) making payments from Kische to JD Stellar without Mr. Uysal's authorization; and

10   (8) otherwise improperly utilizing Kische's resources.  (*See* Am. Compl.  ¶¶ 4.24, 4.28,

11   4.29, 4.31-4.33, 4.36, 4.38-4.40.)  In addition, Kische alleges that it "expended

12   considerable sums of money" and other resources developing the Kische brand (*id.* ¶ 4.5),

13   and that prior to the alleged improper competition, Kische generated annual revenue of

14   $13 million from another of Kische's trademarks, the "Kische" mark (*id.* ¶ 4.10).  Kische

15   further alleges that its revenue is now $0.00.  (*Id.* ¶ 4.42.)

16        On February 4, 2016, Kische brought this suit against Mr. Simsek, Ms. Walker,

17   Mr. Costanza, their respective marital communities, and JD Stellar. (*See* Compl. (Dkt.

18   # 1) at 1.)  Kische originally alleged unfair competition under the Lanham Act, 15 U.S.C.

19   § 1051 *et seq.*; false description under the Lanham Act; common law passing off;

20   common law misappropriation of trade secrets; violation of Washington's Uniform Trade

21   Secrets Act ("UTSA"), RCW ch. 19.108; "common law injury to business reputation";

22   breach of contract; breach of fiduciary duty; intentional interference with contractual

ORDER- 3

1  relations; conversion; business opportunity fraud under RCW ch. 19.110; and violation of

2  the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

3  §§ 1961-68.  (*Id.* at 12-19.)  Kische alleged legal malpractice based on theories of

4  negligence and breach of fiduciary duty against Mr. Costanza.  (*Id.* at 19-20.)

5         Defendants moved to dismiss the original complaint for failure to state a claim

6  upon which relief may be granted (Dkt. # 18); (Dkt. # 28), and the court granted in part

7  and denied in part Stellar Defendants' motion to dismiss and granted Mr. Costanza's

8  motion to dismiss  (6/29/16 Order (Dkt. # 39)).  Specifically, the court dismissed all of

9  Kische's claims, except for breach of contract, breach of fiduciary duty, and tortious

10  interference.  (*Id.* at 18, 22.)  The court's dismissal was without prejudice because the

11  court concluded that "[t]hough Kische has not plausibly pleaded many of its claims, the

12  court cannot say on the record before it that leave to amend would be futile or that any

13  other relevant factors weigh against granting leave to amend."  (*Id.* at 31.)

14         Kische filed an amended complaint on August 5, 2016.  (*See* Am. Compl.)  Kische

15  asserts 12 causes of action—10 against Stellar Defendants and three against Mr. Costanza

16  (*id.*)—and most of them are distinct from the causes of action Kische asserted in its initial

17  complaint (*compare* Compl. *with* Am. Compl.).  Against Mr. Costanza, Kische alleges

18  legal malpractice on a negligence theory, breach of fiduciary duty, and civil conspiracy.

19  (Am. Compl. ¶¶ 14.1-14.6, 15.1-15.4; *see also* Resp. to Costanza at 22 ("Plaintiff also

20  pleaded a civil conspiracy claim against Costanza.").)  Against Stellar Defendants,

21  Kische alleges (1) a trademark infringement claim under the Lanham Act, 15 U.S.C.

22  § 1114; (2) a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

ORDER- 4

(3) a trademark dilution claim under the Lanham Act, 15 U.S.C. § 1025(c); (4) violation of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86; (5) breach of contract; (6) breach of fiduciary duty; (7) tortious interference with business relations; (8) conversion; (9) fraud; and (10) civil conspiracy.  (*Id.* ¶¶ 5.1-13.10, 15.1-15.4.)

On August 17, 2016, Mr. Costanza filed a motion to dismiss for failure to state a claim.  (Costanza MTD at 1-2.)  Mr. Costanza argues that Kische Stellar Defendants filed their motion to dismiss on August 19, 2016.  (Stellar MTD at 1.)  They argue that Kische fails to state a claim for trademark infringement, false advertising, trademark dilution, violation of the CPA, breach of fiduciary duty, conversion, fraud, and civil conspiracy, but do not challenge Kische's claims for breach of contract and tortious interference with business relations. (*Id.* at 9.)  Stellar Defendants' and Mr. Costanza's (collectively, "Defendants") motions to dismiss are now before the court.

## III.    ANALYSIS

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6). (*See* Costanza MTD at 3 n. 2; Stellar MTD at 2.)  Accordingly, the court begins by addressing the legal standard that applies to motions under Rule 12(b)(6).  The court then addresses Defendants' motions and whether leave to amend is appropriate.

### A.    Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded allegations of material fact as true and

draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

The court, however, need not accept as true a legal conclusion presented as a factual allegation.  *Id.*  Although the pleading standard Federal Rule of Civil Procedure 8 announces does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).  A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  A complaint does not survive dismissal where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  In addition, "[a] plaintiff suing multiple defendants 'must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.'"  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  In deciding a motion to dismiss, the court may

1   consider the pleadings, documents attached to the pleadings, and documents incorporated

2   by reference in the pleadings.[2] *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

3   2003) (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)).

4          At the outset, the court notes that Kische's amended complaint is replete with case

5   citations, recitation of legal elements, legal argument, and other extraneous material.

6   This material obscures Kische's factual allegations, and, in most instances, does not help

7   nudge Kische's claims any closer to plausibility than would straightforward, clearly

8   stated factual allegations.  *See Harrell v. Hornbrook Cmty. Servs. Dist.*, No.

9   2:14-cv-01595-KJM-GGH, 2015 WL 5329779, at *4 (E.D. Cal. Sept. 10, 2015) ("While

10  documents definitional to a claim may be attached to the complaint, . . . it is not

11  appropriate to submit a myriad of evidentiary exhibits.  The complaint becomes a large

12  evidentiary mess where the defendant is unsure of what to plead to, and unsure of what is

13  presumed true for the purposes of a motion to dismiss."); *Harrison v. Inst. Gang of

14  Investigations*, No. C 07-3824 SI (pr), 2009 WL 1277749, at *1 (N.D. Cal. May 6, 2009)

15  _____

16  [2] Defendants note in their motions to dismiss that Kische's complaint refers to documents
    outside the complaint and do not object to the court considering the material.  (*See* Costanza
17  MTD at 3 nn.3, 6; Stellar MTD at 9 n.2.)  In opposing Stellar Defendants' motion, Kische argues
    that these documents are incorporated into the complaint by reference.  (*See* Resp. to Stellar at
18  21.)  However, in reply, Stellar Defendants argue that Kische did not file with the amended
    complaint the exhibits referenced in the complaint and that the exhibits should therefore not be
19  considered in deciding this Rule 12(b)(6) motion to dismiss.  (Stellar Reply at 5.)  The court
    finds that the exhibits upon which Kische relies in opposing Defendants' motions are
20  incorporated by reference into the amended complaint.  *See Ritchie*, 342 F.3d at 908 ("Even if a
    document is not attached to a complaint, it may be incorporated by reference into a complaint if
21  the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's
    claim.").  Accordingly, the court considers these materials in ruling on Defendants' motions to
22  dismiss.  But to the extent that Kische opts to amend any defective claims, *see infra* § III.D,
    Kische must attach any materials upon which the complaint relies.

("Legal argument, case citations[,] and refutation of arguments that are anticipated are

not necessary or appropriate in a pleading . . . ."); *see also Twombly*, 550 U.S. at 570

("Because the plaintiffs here have not nudged their claims across the line from

conceivable to plausible, their complaint must be dismissed.").  Accordingly, the court

cautions Kische that any future amended complaint should comply with Federal Rule of

Civil Procedure 8's requirement that a pleading contain "a short and plain statement of

the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also*

*infra* § III.D (discussing leave to amend).

**B.     Mr. Costanza's Motion**

1.   Legal Malpractice and Breach of Fiduciary Duty Claims

Kische advances a legal malpractice claim and a breach of fiduciary duty claim

against Mr. Costanza.  (*See* Am. Compl. ¶¶ 14.1-14.15.)  In its complaint, Kische

addresses the two claims together and relies on the same allegations for both claims.  (*Id.*)

The court also addresses the claims together.

"To establish legal malpractice, a plaintiff must show '(1) the existence of an

attorney-client relationship giving rise to a duty of care to the client, (2) [an] act or

omission in breach of the duty, (3) damages to the client, and (4) proximate causation

between the breach and damages.'"  *Estep v. Hamilton*, 201 P.3d 331, 336 (Wash. Ct.

App. 2008) (quoting *Smith v. Preston Gates Ellis, L.L.P.*, 147 P.3d 600, 602 (Wash. Ct.

App. 2006)).  An attorney-client relationship exists when "the conduct between an

individual and an attorney is such that the individual subjectively believes such a

relationship exists."  *Dietz v. Doe*, 935 P.2d 611, 615 (Wash. 1997).  "To comply with the

1    duty of care, an attorney must exercise the degree of care, skill, diligence, and knowledge

2    commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the

3    practice of law in [Washington]." *Id.* (alternation in original) (quoting *Hizey v.*

4    *Carpenter*, 830 P.2d 646, 652 (Wash. 1992)).  An attorney's violation of the Rules of

5    Professional Conduct does not alone demonstrate breach of the duty of care.  *Hizey*, 830

6    P.2d at 652.

7         An attorney may also be liable for breach of a fiduciary duty, "which focuses on

8    the loyalty owed by the attorney to the client."[3]  *See Bronzich v. Persels & Assocs. LLC*,

9    No. C10-0364EFS, 2011 WL 2119372, at *10 (E.D. Wash. May 27, 2011).  A claim for

10   breach of fiduciary duty requires the plaintiff to prove:  (1) the existence of a duty owed;

11   (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach caused the

12   injury.  *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217

13   (Wash. Ct. App. 2002).  An attorney breaches his fiduciary duty to a client when the

14   attorney benefits improperly from the attorney-client relationship.  *See Bronzich*, 2011

15   WL 2119372, at *10.

16        Kische asserts that Mr. Costanza owed Kische and its owner, Mr. Uysal, several

17   duties, all of which appear to be variations on a duty to investigate:  (1) "to determine

18

---

19

20   [3] Although Washington courts have "not clearly identified why a plaintiff may pursue
both a legal malpractice and a breach-of-fiduciary-duty claim against the attorney when these
claims' elements mirror one another," courts have nonetheless allowed plaintiffs to pursue both

21   claims simultaneously.  *Bronzich v. Persels & Assocs. LLC*, No. C10-0364EFS, 2011 WL
2119372, at *10 (E.D. Wash. May 27, 2011) ("A legal malpractice claim focuses on the

22   attorney's alleged negligent performance[, . . .] [w]hereas, a breach-of-fiduciary-duty claim
focuses on the loyalty owed by the attorney to the client.").

1  who has decision making authority for [an] organization" any time an attorney represents

2  an organization (*id.* ¶ 14.6.); (2) "to have communication with the owner of the company

3  to make sure things were on the up and up" (*id.* ¶ 14.7); and (3) to investigate further

4  when it seemed "that something was amiss" (*id.* ¶ 14.8).  Kische further states that RPC

5  1.1, which addresses competent representation, required Mr. Costanza to "check with the

6  Plaintiff President to ensure he was doing what was in his client's best interest" because

7  it is "not unheard of [that] a manager partner or chief executive manager of a small

8  company with international ties" will "go rogue and try to maximize personal profit."

9  (*Id.* ¶ 14.10.)  Kische also alleges that Mr. Costanza "violated RPCs and committed

10  negligence by not . . . performing a basic conflicts check when first asked about

11  transferring a trademark from" Kische.  (*Id.* ¶ 14.16.)

12       The court previously determined that Kische had failed to state claims for legal

13  malpractice and breach of fiduciary duty against Mr. Costanza because Kische's

14  allegations supported the "obvious alternative explanation" that Mr. Simsek had apparent

15  authority to employ and direct Mr. Costanza's legal services.  (6/29/16 Order at 29-31.)

16  Mr. Costanza argues that "the amended complaint remains completely devoid of factual

17  content that supports a plausible conclusion that [Mr.] Simsek did not have apparent

18  authority" to direct Mr. Costanza to assign the Marseille mark.  (Costanza MTD at 2.)

19  Mr. Costanza also contends that Kische's claims are premised on "the notion that [Mr.]

20  Costanza had a duty to Kische's member, [Mr.] Uysal" and that Mr. Costanza "knew or

21  should have known that [Mr.] Simsek's conduct was wrongful."  (*Id.* at 5.)

22  //

1    In response, Kische argues that there was an attorney-client relationship between

2    Mr. Uysal and Mr. Costanza—not just between Kische and Mr. Costanza—and that Mr.

3    Costanza owed duties to Mr. Uysal.  (*Id.* at 9-10.)  Kische further argues that Mr.

4    Costanza cannot rely on the apparent authority doctrine because he "provides no evidence

5    of an objective manifestation of Mr. Uysal's intent to authorize Mr. Simsek to transfer

6    trademarks away from Kische."  (*Id.* at 13.)

7         Although Kische is correct that "legal malpractice actions [may] be brought by

8    persons other than the clients of attorneys in some factual situations," *Stangland v. Brock*,

9    747 P.2d 464, 467 (Wash. 1987), this rule does not help Kische.  To the extent that

10   Kische alleges legal malpractice and breach of fiduciary duty based on duties arising

11   from an attorney-client relationship between Mr. Uysal and Mr. Costanza, Kische fails to

12   state a claim because Mr. Uysal is not a party to this action and Kische provides no

13   authority to establish that it has standing to pursue a legal malpractice claim on Mr.

14   Uysal's behalf.  (*See* Resp. to Costanza at 11 (stating only that Mr. Uysal owns Kische).)

15        In addition, Kische's allegations regarding Mr. Costanza's representation of

16   Kische are again "merely consistent with" legal malpractice and breach of fiduciary duty.

17   *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with'

18   a defendant's liability, it 'stops short of the line between possibility and plausibility of

19   entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  A plaintiff fails to state a

20   plausible claim if the facts alleged better support an 'obvious alternative explanation'

21   according to which the defendant's conduct was lawful.  *Id.* at 680-82.  Kische's

22   allegations better support the "obvious alternative explanation" that Mr. Simsek had at

1  least apparent authority to instruct Mr. Costanza to transfer the Marseille mark and that

2  Mr. Costanza therefore did not breach a duty to Kische.  *Id.*

3         As in its original complaint, Kische alleges that Mr. Costanza failed to notify or

4  consult with Mr. Uysal or Kische before transferring the Marseille mark.  (*Compare*

5  Compl. ¶¶ 17.2, 18.2 *with* Am. Compl. ¶¶ 14.7, 14.10-14.11.)  But "[u]nder apparent

6  authority, an agent . . . binds a principal . . . if objective manifestations of the principal

7  'cause the one claiming apparent authority to actually, or subjectively, believe that the

8  agent has authority to act for the principal' and such belief is objectively reasonable."

9  *Mohr v. Grantham*, 262 P.2d 490, 498 (Wash. 2011) (quoting *King v. Riveland*, 886 P.2d

10  160, 165 (Wash. 1994)).  In Washington, "a party dealing in good faith with an agent

11  who appears to be acting within the scope of the agent's authority is not bound by

12  undisclosed limitations on the agent's power."  *Hoglund v. Meeks*, 170 P.3d 37, 44

13  (Wash. Ct. App. 2007); *see also Udall v. T.D. Escrow Servs., Inc.*, 154 P.3d 882, 914

14  (Wash. 2007) (quoting *Restatement (Third) of Agency* § 3.03 cmt. b at 175 (2006)

15  ("[W]hen a principal has vested an agent with 'general authority to engage in a class of

16  transactions, subject to limits known only to the agent and the principal, third parties may

17  reasonably believe the agent to be authorized to conduct such transactions and need not

18  inquire into the existence of undisclosed limits on the agent's authority.'"))  A principal

19  may cloak an agent with apparent authority "'by appointing [him] to a position, such as

20  that of manager or treasurer, which carries with it generally recognized duties; to those

21  who know of the appointment there is apparent authority to do the things ordinarily

22  entrusted to one occupying such a position.'"  *Smith v. Hansen, Hansen & Johnson, Inc.*,

1   818 P.2d 1127, 1133 (Wash. Ct. App. 1991) (quoting *Restatement (Second) of Agency*

2   § 27 cmt. a at 104 (1958)).

3      As before, Kische's complaint indicates that Mr. Costanza provided legal services

4   at Mr. Simsek's direction in connection with the assignment of the Marseille mark to JD

5   Stellar.  (Am. Compl. ¶¶ 4.36, 4.43.)  Kische also alleges that it is a Washington limited

6   liability company ("LLC") (*id.* ¶ 1.8) and that its Operating Agreement appointed Mr.

7   Simsek to be Kische's Chief Executive Manager (*id.* ¶ 4.20).  In Washington, the

8   manager of a manager-managed LLC "is the agent of the [LLC] and has the authority to

9   bind the [LLC] with regard to matters in the ordinary course of its activities."  RCW

10  25.15.154(2)(a); *see also* RCW 25.15.154(1).  Although Kische asserts that the

11  assignment of the mark was not a "'day to day[,]' normal business occurrence[]" (Am.

12  Compl. ¶ 14.5), Kische concedes that Mr. Simsek "may have had 'apparent authority' to

13  instruct [Mr.] Costanza as to certain things" (*id.* ¶ 14.7) and does not allege that Mr.

14  Costanza knew about any limit on Mr. Simsek's authority (*see generally id.*).  The few

15  facts Kische has alleged therefore support the obvious alternative explanation that Mr.

16  Costanza had an objectively reasonable basis to conclude that Mr. Simsek had authority

17  to enlist Mr. Costanza's legal services to assign the Marseille mark.

18     Finally, the court notes that although Kische expressly disavows any attempt to

19  assert a breach of contract theory of legal malpractice against Mr. Costanza (Am. Compl.

20  ¶ 14.4), Kische states in the very next paragraph of its complaint that "[Mr.] Costanza

21  breached contractual duties" owed to Kische (*id.* ¶ 14.5).  It is thus unclear whether

22  Kische attempts to state a legal malpractice claim on this theory, but regardless, Kische

1  alleges no facts related to a breach of contract between Kische and Mr. Costanza.  (*See*

2  *generally id.*)  Accordingly, to the extent Kische alleges malpractice on a breach of

3  contract theory, the court dismisses Kische's claim.

4      For the foregoing reasons, the court dismisses Kische's legal malpractice and

5  breach of fiduciary duty claims against Mr. Costanza.

6      2.  Civil Conspiracy

7      "An action for civil conspiracy lies when there is an agreement by two or more

8  persons to accomplish some purpose, not in itself unlawful, by unlawful means."  *Sterling*

9  *Bus. Forms, Inc. v. Thorpe*, 918 P.2d 531, 533 (Wash. Ct. App. 1996).  "To establish a

10  claim for civil conspiracy, [a plaintiff] 'must prove by clear, cogent, and convincing

11  evidence that (1) two or more people combined to accomplish an unlawful purpose, or

12  combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators

13  entered into an agreement to accomplish the conspiracy.'"  *Woody v. Stapp*, 189 P.3d

14  807, 810 (Wash. Ct. App. 2008) (quoting *All Star Gas, Inc. v. Bechard*, 998 P.2d 367,

15  372 (Wash. Ct. App. 2000)).

16      In its amended complaint, Kische alleges that "Defendants entered into a civil

17  conspiracy to unlawfully and unfairly compete with" Kische and to "deprive" Kische of

18  benefits it derives from the Kische and Marseille marks.  (Am. Compl. ¶ 15.2.)  Mr.

19  Costanza argues that it is not clear whether Kische asserts this claim against him.

20  (Costanza MTD at 10-11.)  He further argues that if Kische does allege the claim against

21  Mr. Costanza, Kische does not include in its complaint even a "formulaic recitation" that

22  Mr. Costanza and Stellar Defendants entered into an agreement.  (*Id.*)  In response,

1    Kische argues that Mr. Costanza had "communications" with Mr. Simsek regarding

2    assigning Kische's mark to JD Stellar and therefore had "knowledge of Mr. Simsek's

3    plan." (Resp. to Costanza MTD at 23.)  Kische also contends that "[e]ven if [Mr.]

4    Costanza could claim he did not know of Mr. Simsek's plan to divert sales from Kische

5    to JD Stellar, he was informed on [March 24, 2014,] by Mr. Simsek that [Mr. Simsek]

6    had stopped working for Kische in 2013." (*Id.*)  Kische also argues that it "has even

7    provided evidence of the agreement between Mr. Simsek and Mr. Costanza." (Resp. to

8    Stellar at 24 (citing Uysal Decl. at 7-8, Ex. 24).)

9           The court concludes that Kische has inadequately pleaded a civil conspiracy claim

10   against Mr. Costanza.  The amended complaint contains no allegations that Mr. Costanza

11   and Stellar Defendants entered into an agreement.  (*See* Am. Compl. ¶¶ 15.1-15.4.)

12   Indeed, Kische does not argue in response to Mr. Costanza's motion that the facts alleged

13   in the complaint amount to an agreement, stating only that Mr. Costanza had

14   "knowledge" of an alleged scheme; this purported knowledge is not clear from the face of

15   the complaint.  (Resp. to Costanza MTD at 23; Am. Compl. ¶¶ 15.1-15.4.)  In addition,

16   the emails that Kische asserts demonstrate an agreement between Mr. Costanza and Mr.

17   Simsek show only that Mr. Costanza told Mr. Simsek that he could "prepare and file a

18   new application to register [the] KISCHE [mark] without any logo graphics for about

19   $1100." (Pl. Decl. Ex. 24 at 2.)  Therefore, Kische has made no allegations that Mr.

20   Costanza agreed to achieve "an unlawful purpose, or combined to accomplish a lawful

21   purpose by unlawful means." *Thorpe*, 918 P.2d at 533.

22   //

1    The court further notes that Kische has not "allege[d] the basis of this claim"

2  against Mr. Costanza specifically, *see Flores*, 997 F. Supp. 2d at 1103, which presents

3  fair notice concerns, *see* Fed. R. Civ. P. 8; (Costanza MTD at 4 ("Although not clear, [the

4  civil conspiracy claim] also appears to be alleged against Costanza.")).  For these reasons,

5  Kische fails to state a claim for civil conspiracy against Mr. Costanza.

6  **C.    Stellar Defendants' Motion**

7       1.   <u>Trademark Infringement</u>

8       "To establish a claim for trademark infringement, [a plaintiff] must allege facts to

9  show '(1) that it has a protect[a]ble ownership interest in the mark; and (2) that the

10  defendant's use of the mark is likely to cause consumer confusion, thereby infringing

11  upon [the plaintiff's] rights to the mark.'"  *Airs Aromatics, LLC v. Opinion Victoria's*

12  *Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (quoting *Dep't of*

13  *Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th

14  Cir. 2006)); *see also Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 87 (D. Mass. 2014)

15  (stating that these requirements establish standing to bring suit under the Lanham Act);

16  *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL

17  4944370, at *4-5 (N.D. Tex. Sept. 16, 2016) (noting that whether a plaintiff has standing

18  to bring a Lanham Act claim is a question of statutory standing and "is . . . properly

19  addressed under Rule 12(b)(6)").  Registration of a trademark with the United States

20  Patent and Trademark Office ("USPTO") is prima facie evidence of the validity of the

21  mark, and the owner's ownership of and exclusive right to use the mark.  *See* 15 U.S.C.

22  § 1115(a).  In addition, a plaintiff demonstrates a protectable ownership interest when

1    "the owner [establishes] 'not only that he or she used the mark before the mark was

2    registered, but also that such use has continued to the present.'" *Airs Aromatics*, 744

3    F.3d at 599 (quoting *Watec Co. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005)).

4          "[T]he sine qua non of trademark infringement," however, "is consumer

5    confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137,

6    1142 (9th Cir. 2011).  In the Ninth Circuit, the consumer confusion analysis focuses on

7    "whether a reasonably prudent consumer in the marketplace is likely to be confused as to

8    the origin of the good or service bearing one of the marks." *Rearden LLC v. Rearden*

9    *Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) (internal quotation marks omitted).

10   In assessing customer confusion, the court applies eight factors from *AMF, Inc. v.*

11   *Sleekcraft Boats*, 599 F.3d 341, 348 (9th Cir. 1979):  "[1] strength of the mark; [2]

12   proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5]

13   marketing channels used; [6] type of goods and the degree of care likely to be exercised

14   by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of

15   expansion of the product lines.'" *Id.* (alterations in original); *see also id.* ("The *Sleekcraft*

16   factors are intended as an adaptable proxy for consumer confusion, not a rote checklist").

17   "Whether the use of a mark will result in a likelihood of confusion within the meaning of

18   the Lanham Act is a 'mixed question of law and fact that is predominantly factual in

19   nature.'" *Coast Law Grp. v. Panagiotou*, No. 12cv1446, 2013 WL 12114633, at *2 (S.D.

20   Cal. Mar. 28, 2013) (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280,

21   1288 (9th Cir. 1992)).

22   //

1    Stellar Defendants argue that Kische has not stated a claim under either 15 U.S.C.

2    § 1114(1)(a) or 15 U.S.C. § 1114(1)(b), both of which address trademark infringement.

3    (*See* Stellar MTD at 13-14.)  Stellar Defendants contend that Kische has not pleaded an

4    ownership interest in the Dantelle mark or consumer confusion as to the Kische,

5    Marseille, or Dantelle marks.  (*See id.* at 14 (Kische "does not allege any specific facts as

6    to how consumers were confused.").)  Kische responds that it pleaded ownership of the

7    marks (Resp. to Stellar at 9-11) and "specifically pleaded and applied the likelihood of

8    confusion factors set out in [*Sleekcraft*]" (*id.* at 12).  Kische further contends

9    that it "pleaded evidence of actual customer confusion" through declarations from

10   Lorraine Hooshyar, a clothing buyer, and Kische's counsel.  (*Id.* at 13.)

11       The court first analyzes the ownership element and concludes that Kische has

12   pleaded this element as to the Kische mark, but not the Marseille or Dantelle marks.

13   Kische alleges that from 2007 to the present, Kische owned, registered, and has used in

14   commerce the Kische mark.  (Am. Compl. ¶¶ 4.4-4.9, 4.18.)  These allegations are

15   sufficient to plead ownership of the mark.  *See* 15 U.S.C. § 1115(a); *Air Aromatics*, 744

16   F.3d at 599.  However, Kische fails to adequately allege ownership of the other two

17   marks.  Kische alleges that it began using the Marseille mark in commerce and registered

18   the mark in 2010 until Stellar Defendants allegedly fraudulently transferred the mark to

19   JD Stellar in 2014.[4]  (*Id.* ¶¶ 4.21-4.22.)  In response to Stellar Defendants' motion,

20   _____

21       [4] In the complaint, Kische discusses both a Marseille design mark and a Marseille
22   wordmark.  (*See* Am. Compl. ¶¶ 4.21, 4.37.)  It is unclear from the complaint whether Kische
     asserts any infringement of the wordmark, but the court's analysis would be the same as to the

1    Kische states that because "[t]he validity of a mark may be challenged on the grounds

2    that it has been obtained fraudulently," Kische has alleged "that it still owns" the

3    Marseille mark.[5]   (Resp. to Stellar at 11.)  However, Kische's complaint is devoid of any

4    allegations that Kische claims an ownership interest in the mark after the transfer to JD

5    Stellar.  Accordingly, the court finds that Kische has not adequately pleaded ownership of

6    the Marseille mark.  Finally, although Kische alleges that it owns the Dantelle mark

7    because "the mark was first registered and used in commerce when Defendant Simsek

8    was under an exclusive contract" with Kische (*id.* ¶ 4.26), Kische does not assert a claim

9    of trademark infringement in connection with the Dantelle mark (*id.* ¶¶ 5.1-5.3 (stating its

10   trademark infringement claim without reference to Dantelle mark)).  Accordingly,

11   although Kische has pleaded a protectable ownership interest in the Dantelle mark, its

12   alleged ownership is irrelevant to the trademark infringement claim Kische asserts.

13          The court now turns to the consumer confusion element as applied to the Kische

14   mark.  When evaluating the likelihood of consumer confusion element, "[i]f the court

15   determines as a matter of law from the pleadings that the goods are unrelated and

16   _____

17   wordmark because Kische alleges that JD Stellar filed an application for the Marseille wordmark
     and makes no allegations that Kische has a protectable ownership interest in the wordmark.  (*See*
18   *id.* ¶ 4.37.)

19          [5] Kische does not allege in its complaint that it still owns the Marseille mark despite the
     alleged fraudulent transfer nor does it provide any relevant authority in its response for an
20   ownership interest after a mark has been transferred.  (*See* Am. Compl. ¶ 4.21; Resp. to Stellar at
     11 (citing case law addressing cancellation of a trademark).)  Thus, the court concludes that
21   Kische has failed to adequately plead this element because the court cannot reasonably infer
     from the facts before it that Kische has a protectable ownership interest in the mark.  Kische may
22   amend its complaint to allege such an ownership interest, however, pursuant to the court's leave
     to amend.  *See infra* § III.D.

1    confusion is unlikely, the complaint should be dismissed." *Murray v. Cable Nat'l Broad.*

2    *Co.*, 86 F.3d 858, 860 (9th Cir. 1996).  "But, while likelihood of confusion can be

3    decided as a matter of law, '[w]hether confusion is likely is a factual determination

4    woven into the law' that courts 'routinely treat . . . as [an issue] of fact.'" *Parts.com*, 996

5    F. Supp. 2d at 936 (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356

6    (9th Cir. 1985)).  Kische alleges a number of facts that support a likelihood of customer

7    confusion as to the Kische mark.  (*See* Am. Compl. ¶ 4.42.)  Specifically, Kische alleges

8    that Stellar Defendants sell identical products, use an identical mark, use the same

9    marketing channels, and continue to expand their business, all of which support a finding

10   of consumer confusion when taken as true.  (*Id.*); *see also Network Automation*, 638 F.3d

11   at 1142 (applying the *Sleekcraft* factors).  At this stage of the proceedings, the court

12   evaluates the sufficiency of Kische's complaint, not the merits of its claims.  Because

13   Kische has adequately pleaded ownership of and likely consumer confusion related to the

14   Kische mark, the court denies Stellar Defendants' motion to dismiss Kische's trademark

15   infringement claim as to the Kische mark.

16        2.  False Advertising

17        "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false

18   designations of origin, false descriptions, and false representations in advertising and

19   //

20   //

21   //

22   //

ORDER- 20

sales in interstate commerce."[6]  *Dyson, Inc. v. Oreck Corp.*, No. 07-9633, 2009 WL 537074, at *5 (E.D. La. Mar. 4, 2009).  A false advertising claim under the Lanham Act has five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).  "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead . . . an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S. Ct. 1377, 1395 (2014).  False advertising claims are subject to heightened pleading standards.  *See A.H. Lundberg Assocs. v. TSI, Inc.*, No. C14-1160JLR, 2014 WL 5365514, at *7 (W.D. Wash. Oct. 21, 2014); *Instant Checkmate, Inc. v. Background Alert, Inc.*, No. 3:14-cv-01182-MMA-DHB, 2014 WL 12526275, at *5 (S.D. Cal. Dec. 5, 2014) ("Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).").  For claims that rest on

---

[6] In contrast to its first complaint, Kische asserts only a false advertising claim against Stellar Defendants.  (*See* Am. Compl. ¶¶ 6.1-6.14; Resp. to Stellar at 14-16.)  To the extent that Kische has attempted to state a claim for false association under Section 43(a)(1)(A), however, Kische fails to sufficiently allege the claim.  (*See, e.g.*, Am. Compl. ¶ 6.4 ("In response to [the court's June 29, 2016, order,] Plaintiff further refines its claims for trademark and unfair competition for 'false advertising' under § 43(a)(1)(B) for misrepresentations that the 'KISCHE' mark and the 'KISCHE' signature cardigan design were used to sell Defendant JD STELLAR products . . . .").)

1   fraudulent conduct, as is the case here, the court "strips away" the fraud allegations if a

2   plaintiff does not plead them with the particularity Rule 9(b) requires and "looks

3   exclusively to the remaining (non-fraud) allegations to determine whether they . . . save

4   th[e] claim from dismissal." *LT Int'l Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238,

5   1246 (D. Nev. 2014).

6          Stellar Defendants first argue that Kische fails to sufficiently allege a false

7   statement of fact in a commercial advertisement about Kische's products.[7]  (Stellar MTD

8   at 15-16.)  In its complaint, Kische alleges that JD Stellar's use of the Kische mark as a

9   key word, the Kische address as its address, and Kische's clothing designs are "false

10  statements of fact in commercial advertisements."  (Am. Compl. ¶ 6.7.)  These

11  allegations do not describe statements of fact, however, because the alleged statements do

12  not "include 'specific' assertions that . . . describe 'absolute characteristics' of [Kische's

13  products] that could be tested."  *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F.

14  Supp. 3d 852, 861 (N.D. Cal. 2015) (quoting *Newcal Indus., Inc. v. Ikon Office Sol.*, 513

15  F.3d 1038, 1053 (9th Cir. 2008) ("[A] statement that is quantifiable, that makes a claim

16  as to the 'specific or absolute characteristics of a product,' may be an actionable

17  statement of fact . . . .")); *see also Newcal Indus.*, 513 F.3d at 1053 (holding that whether

18  an alleged misrepresentation is a statement of fact is a question of law).  At most, Kische

19  appears to recycle these allegations from its previous complaint when it attempted to state

20

21          [7] The court does not address whether Kische has adequately alleged the other elements of
22  its false advertising claim because the court concludes that Kische has failed to allege any false
    statements of fact that were made in a commercial advertisement.

1    "a reverse passing off claim by alleging that Stellar Defendants stole Kische's designs

2    and sold clothing embodying those designs under a different mark."  (6/29/16 Order at 9.)

3    The court dismissed that claim because "Kische allege[d] only appropriation of a product,

4    which is inadequate to state a reverse passing off claim under Section 43(a)(1)(A)."  (*Id.*

5    at 10 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003);

6    *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1199-1200

7    (S.D. Cal. 2013)).)  The court concludes that the operative allegations do not constitute

8    false statements of fact for purposes of stating a false advertising claim.

9          Kische also alleges that Stellar Defendants made false statements to Kische's

10    clients and incorporates the declaration of Lorraine Hooshyar, "[s]ales representative for

11    specialty stores," into its complaint to provide additional factual allegations.  (Am.

12    Compl. ¶ 6.10 (citing Hooshyar Decl. (Dkt. # 47)); Hooshyar Decl. ¶ 2; Resp. to Stellar

13    MTD at 15 ("[Kische] pleaded that JD Stellar made false statements . . . to retailers that

14    KISCHE products were poor quality . . . and that [Kische] was going out of business."

15    (internal citations omitted)).)  However, the declaration does not contain any allegations

16    that Stellar Defendants made the asserted misrepresentations.  (*See* Hooshyar Decl.

17    ¶¶ 3-5.)  Rather, Ms. Hooshyar states only what buyers—not Stellar Defendants—told

18    her:  that Mr. Uysal "had shipped substandard product" (*id.* ¶ 3), that Mr. Uysal and

19    Kische "were closing their business" (*id.*), and that a buyer had to "cancel [an order]

20    because [Mr. Uysal and Kische] couldn't meet the delivery or produce the garments" (*id.*

21    ¶ 4).  The only conduct attributable to Stellar Defendants that Ms. Hooshyar identifies is

22    that "[e]ach and every buyer that I have reached out to has had a bad taste due to the

1    ending and the untruths that have been spoken by [Ms. Walker and Mr. Simsek]." (*Id.*

2    ¶ 3.) This conclusory statement, however, is insufficient for Kische to have adequately

3    pleaded false statements of fact by Stellar Defendants, particularly given the heightened

4    pleading requirement. *See Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No.

5    CV 14-03954 DDP (MANx), 2014 WL 6892141, at *2 (C.D. Cal. Nov. 5, 2014) (finding

6    that plaintiffs had not alleged facts to support a false advertising claim because plaintiffs

7    had "not alleged clearly that Defendant made a false statement of fact").

8        In addition, Kische has not pleaded facts from which the court may infer that the

9    alleged false statements constitute commercial advertising or promotion. To constitute

10   commercial advertising, a statement of fact must be:

11       (1) commercial speech; (2) by the defendant who is in commercial
         competition with the plaintiff; (3) for the purpose of influencing consumers
12       to buy defendant's goods or services. While the representations need not
         be made in a 'classic advertising campaign,' but may consist instead of
13       more informal types of 'promotion,' the representations (4) must be
         disseminated sufficiently to the relevant purchasing public to constitute
14       'advertising' or 'promotion' within that industry.

15   *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

16   The Ninth Circuit Court of Appeals has held that a party sufficiently alleged commercial

17   advertising where it alleged that statements were made to all of the company's customers

18   "by the broad dissemination of pieces of promotional literature to thousands of accounts

19   by . . . over 2,000 sales representatives and employees." *Newcal Indus.*, 513 F.3d at

20   1054.

21       Here, Kische asserts only that Stellar Defendants' alleged use of the Kische mark,

22   the Kische address, and Kische's clothing designs were "false statements of fact in

ORDER- 24

1   commercial advertisements." (Am. Compl. ¶ 6.7.)  Kische follows this conclusory

2   allegation with the statement that "[a] simple search of the term 'DANTELLE' shows

3   information about [Kische]." (*Id.*)  Kische has failed to meet its obligation to plead the

4   elements of its false advertising claim with particularity, s*ee A.H. Lundberg Assocs.*,

5   2014 WL 5365514, at *7; Fed. R. Civ. P. 9(b), and the court finds these statements

6   insufficient to allege that Stellar Defendants made a false statement in a commercial

7   advertisement. The court cannot reasonably infer that the statements were made to

8   influence consumers to buy JD Stellar's goods or were "disseminated sufficiently to the

9   relevant purchasing public." *See Coastal Abstract Serv.*, 173 F.3d at 735.

10       For these reasons, Kische has failed to state a claim for false advertising under the

11   Lanham Act.[8]

12       3.  <u>Trademark Dilution</u>

13   "In order to prove a [trademark dilution] violation, a plaintiff must show that (1)

14   the mark is famous and distinctive; (2) the defendant is making use of the mark in

15   commerce; (3) the defendant's use began after the mark became famous; and (4) the

16   defendant's use of the mark is likely to cause dilution by blurring or dilution by

17   tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007). "A

18   mark is famous if it is widely recognized by the general consuming public of the United

19   States as a designation of source of the goods or services of the mark's owner." 15

20

21   _____

22   [8] The court declines to address whether Kische has adequately pleaded the other elements
of this claim.

ORDER- 25

1  U.S.C. § 1125(c)(2)(A).  To determine whether a mark possesses the requisite degree of

2  recognition to be considered famous,

> the court may consider all relevant factors, including the following:
> (i) The duration, extent, and geographic reach of advertising and publicity
> of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or
> services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered . . . .

7  *Id.*

8      Stellar Defendants first argue that Kische has inadequately alleged that its

9  Marseille and Kische marks are famous and that Stellar Defendants began using the

10  marks after they had become famous.  (Stellar MTD at 18.)  Stellar Defendants also argue

11  that Kische has not adequately alleged that Defendants used an identical mark in

12  commerce after Kische's marks had become famous (*id.*) and that Kische's marks have

13  been diluted through blurring or tarnishment (*id.* at 19).

14      Kische alleges that its Kische and Marseille marks[9] are "distinctive and famous

15  within the meaning of [15 U.S.C. § 1125(c)]" and Stellar Defendants began using the

16  marks in commerce "after [Kische's] mark[s] became distinctive and famous."  (Am.

17  Compl. ¶ 7.2.)  In response to Stellar Defendants' motion, Kische elaborates on these

18  allegations, arguing that its marks are famous "due to [Kische's] reputation for high

19  quality women's fashion."  (Resp. to Stellar at 17.)  In support of this contention, Kische

---

20      [9] As the court addressed above, Kische does not adequately allege that it own the

21  Marseille mark.  *See supra* § III.C.1.  However, the court addresses both the Kische and
Marseille marks here because Stellar Defendants do not raise the issue of ownership in moving

22  to dismiss this claim, and the court concludes that Kische has not adequately alleged that its
marks are famous within the meaning of the relevant statute.

1  cites to materials incorporated in the complaint, including a video in which a

2  commentator calls Kische a "luxurious line," customer ratings, purchase orders to "major

3  women's fashion retailers," and an email in which "Taste of Eden show[ed that] it

4  thought that [the] Kische cardigan was famous." (*Id.* (citing Pl. Decl.; Herschlip Decl.

5  (Dkt. # 45) ¶ 15, Ex. 14).)[10]

6          The court concludes that Kische's allegations do not reasonably support the

7  inference that Kische's marks enjoy the "requisite recognition," 15 U.S.C.

8  § 1125(c)(2)(A), and are "widely recognized by the general consuming public of the

9  United States," *id.*; *see also Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 940

10  (S.D. Cal. 2013) (dismissing claim for trademark dilution where there were "no factual

11  allegations" regarding the fame of the mark "beyond the bare bones assertion that

12  Plaintiffs ha[d] expended a significant amount of resources to promote the [the] mark

13  through the United States" (internal quotation marks omitted) (second alteration in

14  original)).  The evidence on which Kische bases its factual allegations shows at most that

15  fashion purchasers recognized Kische's marks—not that the general consuming public

16  widely recognized the marks.  (*See* Herschlip Decl. Ex. 14).)  Similarly, the fact that a

17  commentator called the Kische brand a "luxurious line" or that a few customers gave

18

19  _____

     [10] The exhibit that Kische contends shows that "Taste of Eden" expressed that the
     "Kische cardigan was famous" shows pictures of clothing items that are ostensibly the result of
20  an internet search.  (*See* Herschlip Decl., Ex. 14.)  This exhibit does nothing to support Kische's
     conclusory allegation that its marks are famous.  As the court noted in its previous order on
     Defendants' motions to dismiss Kische's complaint, Kische must follow any statements about
21  what the record shows with "a citation to a specific portion of a specific document in the record."
     (6/29/16 Order at 6 n.2.)  Those citations must be correct because the court will not dig through
     the record to find support for Kische's claims and arguments.  *See United States v. Dunkel*, 927
22  F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

high ratings to Kische's clothing do not lead to the reasonable inference that the marks

are widely recognized by the consuming public.  (*See id.*)  For these reasons, Kische has

failed to state a trademark dilution claim.[11]

4.  <u>Violation of CPA</u>

"To prevail on a claim under the [CPA], a private plaintiff must prove (1) an

unfair or deceptive act or practice (2) occurring in trade or commerce (3) affecting the

public interest, (4) injury to a person's business or property, and (5) causation." *Rhodes*

*v. Rains*, 381 P.3d 58, 62 (Wash. Ct. App. 2016) (citing *Hangman Ridge Training*

*Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (Wash. 1986)).  "[A]n act or practice is

deceptive [under the CPA] if it has the capacity to deceive a substantial portion of the

public," *id.* at 63, which requires "a real and substantial potential for repetition, as

opposed to a hypothetical possibility of an isolated unfair or deceptive act's being

repeated," *Behnke v. Ahrens*, 294 P.3d 729, 737 (Wash. Ct. App. 2012).  Such an act or

practice occurs in trade or commerce when the act or practice implicates "the sale of

assets or services [or] any commerce directly or indirectly affecting the people of the

State of Washington."  RCW 19.86.010(2).  "To meet the 'public interest' element, a

private plaintiff must show not only that a defendant's practices affect the private

plaintiff but that they also have the potential to affect the public interest." *Behnke*, 294

P.3d at 734 (internal quotation marks omitted); *see also* RCW 19.86.093.  "It is the

likelihood that additional plaintiffs have been or will be injured in exactly the same

---

[11] Because Kische fails to adequately allege that the marks are famous and distinctive, the court does not address the other elements of a trademark dilution claim.

1    fashion that changes a factual pattern from a private dispute to one that affects the public

2    interest." *Behnke*, 294 P.3d at 736.  "A plaintiff satisfies the [CPA's] causation

3    requirement by demonstrating that there is a causal link between the misrepresentation

4    and the plaintiff's injury." *Rhodes*, 381 P.3d at 65.  Stellar Defendants argue that Kische

5    has not adequately alleged any of these elements.  (*See* Stellar MTD at 20.)

6          The court finds that Kische has insufficiently alleged an unfair or deceptive

7    practice and an impact on the public interest.  Kische alleges that Stellar Defendants

8    deceived customers by stealing Kische's clothing designs and "wrongfully using Kische's

9    trademark," which suggested to customers that Kische and JD Stellar were the same

10   brand.  (Am. Compl. ¶¶ 8.3-8.4.)  But Kische alleges no facts to support that this conduct

11   had the capacity to deceive a "substantial portion of the public," *Behnke*, 294 P.3d at 737,

12   and the exhibits Kische incorporates into its amended complaint do not remedy this

13   deficiency (*see* Am. Compl. ¶¶ 8.3 (citing Herschlip Decl. ¶ 11, Ex. 8), 8.4 (citing

14   Herschlip Decl. ¶ 21, Ex. 20)).  For example, one of the exhibits that Kische contends

15   shows customers were deceived by JD Stellar's similar products includes pictures of

16   clothing.  (*Id.* ¶ 8.3.)  Even assuming that the clothing items pictured in the exhibit are

17   similar, this fact does not alone suggest a plausible inference that Stellar Defendants

18   deceived "a substantial portion of the public." *Behnke*, 294 P.3d at 737.

19         In addition, the five customer reviews that Kische references do not support a

20   plausible inference that the public was deceived into thinking that Kische and JD Stellar

21   were the same brand.  (*See* Am. Compl. ¶ 8.4 (citing Herschlip Decl. Ex. 20).)  A

22   representative customer review states that the customer bought the JD Stellar cardigan "to

1   replace a lost Nordstrom sweater made by Mod Lustive," which the court cannot

2   conclude is even part of the Kische brand.  (*Id.* at 2.)  Although Kische argues that it

3   pleaded that "every one of plaintiff's customers [who] . . . received JD Stellar's false

4   statement[s] is likely to believe them, and has believed them on such a wide-spread-scale

5   that plaintiff's revenue" fell dramatically (Resp. to Stellar at 18), the allegations in

6   Kische's complaint do not support this sweeping, conclusory contention.  Accordingly,

7   Kische's allegations do not lead to a reasonable inference that Stellar Defendants engaged

8   in deceptive acts that had the potential to deceive a substantial portion of the public.

9         Kische also does not adequately allege that the deceptive acts affected the public

10   interest.  Kische asserts that Stellar Defendants' wrongful use of Kische's trademark

11   injured Kische's brand and goodwill and that Stellar Defendants told suppliers that

12   Kische had gone out of business.  (Am. Compl. ¶¶ 8.4-8.5.)  Thus, Kische has not alleged

13   facts to support that "additional plaintiffs have been or will be injured in exactly the same

14   fashion" as Kische alleges it has been.  *Behnke*, 294 P.3d at 736.  Accordingly, the only

15   plausible inference that the court can draw from these factual allegations is that this

16   dispute is private.[12]

17         5.  <u>Breach of Fiduciary Duty</u>

18         To prevail on a claim of breach of fiduciary duty, the plaintiff must prove the "(1)

19   existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the

20   claimed breach proximately caused the injury."  *Micro Enhancement Int'l, Inc. v.*

21   _____

22   [12] Because Kische fails to plead these elements of its CPA claim, the court declines to address the additional factors.  For the foregoing reasons, Kische has failed to state a CPA claim.

1   *Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002).  "The only duties

2   an LLC manager owes are statutory duties and duties that the LLC operating agreement

3   imposes."  *3BA Int'l LLC v Lubahn*, No. C10-0829RAJ, 2012 WL 2317563, at *4 (W.D.

4   Wash. June 18, 2012) (citing *Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473, 481-82 (Wash.

5   Ct. App. 2007)); RCW 25.15.038(2)-(3) (defining duties of loyalty and care).

6          Kische asserts this breach of fiduciary duty claim only against Mr. Simsek.[13]  (*See*

7   Am. Compl. ¶¶ 10.2, 10.4-10.6.)  Stellar Defendants first argue that Kische's allegations

8   relate to misappropriation of trade secrets, and that the UTSA therefore supersedes the

9   tort duty.  (Stellar MTD at 24-25.)  Stellar Defendants then argue that Kische has not

10  alleged sufficient facts on any of the elements necessary to state a claim for breach of

11  fiduciary duty.  (*Id.* at 25-27.)

12         The court finds that Kische sufficiently alleges the elements of a breach of

13  fiduciary duty claim.  First, Kische alleges that Mr. Simsek violated his duties of loyalty,

14  good faith, and care to Kische.  (*Id.* ¶¶ 10.3-10.8.)  Kische contends that those duties

15  arose from the Operating Agreement.  (*Id.* ¶ 10.2-10.8; *see also* Stellar MTD Resp. at

16  19.)  Thus, even if Kische's claim for breach of fiduciary duty rests on Mr. Simsek's

17  //

18  //

19  //

20  _____

21         [13] To the extent that Kische also attempts to state this claim against Ms. Walker and JD
    Stellar, the court dismisses Kische's claim.  Kische does not allege that Ms. Walker or JD
    Stellar owed a fiduciary duty to Kische or, if they owed a fiduciary duty to Kische, what the duty was.
22  (*See* Am. Compl. ¶¶ 10.1-10.9.)

1  handling of trade secrets, the UTSA does not displace Mr. Simsek's duties to Kische.[14]

2  *See Thola*, 164 P.3d at 532 n.8 (Wash. Ct. App. 2007) (noting that a trial court's jury

3  instruction was incorrect because "[t]he UTSA prohibits litigation for trade secret

4  misappropriation under the common law duty of loyalty" and the incorrect part of the

5  jury instruction "describe[d] trade secret misappropriation . . . not based in contract or

6  criminal law"); (Operating Agreement ¶¶ 4.2.1, 4.2.2.)  Kische also alleges facts that, if

7  true, could constitute a breach of Mr. Simsek's fiduciary duties.  For example, Kische

8  alleges that Mr. Simsek registered a competing mark in "a line of business in direct

9  competition" with Kische's brands (Am. Compl. ¶ 10.3), used Kische's assets to

10  "conduct business and generate profit for JD Stellar" (*id.* ¶ 10.4), and sold the

11  "profitable brand 'Marseille' for $1.00" (*id.* ¶ 10.8).  Accordingly, Kische has adequately

12  alleged the existence of a fiduciary duty and breach of that duty.

13       Stellar Defendants also assert that Kische has failed to adequately plead the

14  elements of proximate causation and damages.  (Stellar MTD at 27.)  Specifically, Stellar

15  Defendants argue that Kische pleads only that "[a]s a result of [Mr. Simsek's] actions

16  and/or failure to act, [Kische] has suffered damages in an amount to be proven at trial."

17  (*Id.* (quoting Am. Compl. ¶ 10.9); *see also* Stellar MTD Resp. at 20 (stating that Kische

18

19

20     [14] The Washington Court of Appeals has endorsed the majority approach to evaluating
UTSA preemption:  "(1) assess the facts that support the plaintiff's civil claim; (2) ask whether
those facts are the same as those that support the plaintiff's UTSA claim; and (3) hold that the

21  UTSA preempts liability on the civil claim unless the common law claim is factually
independent from the UTSA claim."  *Thola v. Henschell*, 164 P.3d 524, 530 (Wash. Ct. App.

22  2007).  Here, Kische does not assert a UTSA claim, so this specific preemption issue is not
before the court.

1    "provided evidence [in its complaint] that [it] was harmed by" Stellar Defendants who

2    "proximately caused the harm.").)[15]  Stellar Defendants argue that Kische "has not

3    plead[ed] sufficient facts as to what the resulting injury may be for Defendants' alleged

4    wrongful acts" and that "Kische provides only these legal conclusions and no sufficient

5    facts supporting the element of proximate cause."  (Stellar MTD at 27.)

6         Stellar Defendants overstate Kische's pleading burden.  As with Stellar

7    Defendants' previous motion to dismiss (6/29/16 Order at 22), Stellar Defendants provide

8    the court with no authority stating that Kische must plead specifically how Mr. Simsek

9    proximately caused its injuries (*see* Stellar MTD at 27 (stating that "resulting injury" is

10   an element of a breach of fiduciary claim and citing a case that defined proximate cause

11   on a motion for summary judgment)).  In addition, Kische alleges earlier in its complaint

12   that Mr. Simsek's actions harmed Kische's reputation and caused a loss of revenue.

13   (Am. Compl. ¶¶ 4.38 (alleging that misrepresentations "resulted in lost contracts and

14   business for [Kische]"), 4.42 ("[Kische's] sales have fallen from millions of dollars

15   annually to zero.").)  The court can reasonably infer that Kische has suffered injury

16   proximately caused by Mr. Simsek's actions, which is sufficient at this stage.  The court

17   therefore denies Stellar Defendants' motion with respect to this claim.

18   //

19

20       [15] Stellar Defendants also argue that an action against Mr. Simsek will not lie where
21   Kische alleges that JD Stellar proximately caused its injuries.  (Stellar Reply at 10.)  Although
     Kische states in its response that JD Stellar proximately caused its injuries (Resp. to Stellar at
     20), Kische's amended complaint alleges that Mr. Simsek proximately caused the injuries (*see*
22   Am. Compl. ¶¶ 10.2-10.9).  The court therefore rejects Stellar Defendants' argument.

6.  <u>Conversion</u>

Conversion "occurs when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214, 1223 (Wash. 2009).  "Wrongful intent is not an element of conversion, and good faith is not a defense." *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 610 (Wash. Ct. App. 2010).  "'Chattel' includes both tangible and intangible goods, such as corporate property." *Lang v. Hougan*, 150 P.3d 622, 637 (Wash. Ct. App. 2007).  "Money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it." *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 18 P.3d 1144, 1147 (Wash. Ct. App. 2001).

Stellar Defendants argue that Kische alleges only a legal conclusion couched as a factual allegation to support its conversion claim:  "Stellar Defendants willfully interfered with [Kische's] chattel, including trademarks, money, and personal property without lawful justification, depriving [Kische] of possession."  (Stellar MTD at 28 (quoting Am. Compl. ¶ 12.3).)  Stellar Defendants also argue that Kische cites to five exhibits but provides no page numbers for the court to discern what specifically Kische seeks to incorporate into its complaint.  (*See id.*)  Kische counters that it pleads that Stellar Defendants "willfully interfered with [Kische's] trademarks, money, and personal property" (Resp. to Stellar at 20), "took and used [Kische's] assets, equipment, employees, inventory contracts with service providers and warehouse, in violation of

1   [Kische's] operating agreement and without authorization" (*id.*), and "deprived [Kische]

2   of possession of [its] profits, [its] company records, trademarks, contracts, client lists,

3   [and] computer passwords" (*id.* at 20-21).

4   　　　The court concludes that Kische has stated a claim for conversion.  Although

5   Stellar Defendants are correct that the section of Kische's complaint that specifically

6   addresses conversion contains only a legal conclusion couched as a factual allegation,

7   this part of the complaint also expressly incorporates Kische's other factual allegations.

8   (Am. Compl. ¶¶ 12.1, 12.3.)  Specifically, Kische's complaint alleges that Stellar

9   Defendants intentionally interfered with a number of its assets, including trademarks,

10  money, and equipment, in violation of the Operating Agreement and without

11  authorization.  (*Id.* ¶¶ 4.22, 4.27, 4.30, 4.32, 4.34.)  The court can reasonably infer from

12  Kische's allegations that Stellar Defendants intentionally interfered with Kische's

13  property, did not have lawful justification to do so, and deprived Kische of possession of

14  its property through this interference.  *See Alhadeff*, 220 P.3d at 1223.  Accordingly,

15  Kische states a claim for conversion, and the court declines to dismiss the claim.

16  　　　7.  Fraud

17  　　　"The elements of . . . fraud include:  (1) representation of an existing fact; (2)

18  materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker

19  that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7)

20  plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it;

21  and (9) damages suffered by the plaintiff."  *Adams v. King Cty.*, 192 P.3d 891, 902

22  (Wash. 2008).  Federal Rule of Civil Procedure 9(b) "demands that the circumstances

1  constituting the alleged fraud be specific enough to give defendants notice of the

2  particular misconduct . . . so that they can defend against the charge and not just deny that

3  they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

4  Cir. 2009) (internal quotation marks omitted).  "Averments of fraud must be

5  accompanied by 'the who, what, when, where, and how' of the misconduct charged."

6  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v.*

7  *Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  "The absence of even one of these identifiers

8  justifies dismissal." *LT Int'l*, 8 F. Supp. 3d at 1246 (citing *Swartz v. KPMG LLP,* 476

9  F.3d 756, 764 (9th Cir. 2007)).  Therefore, "[t]he plaintiff must set forth what is false or

10  misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d

11  1541, 1548 (9th Cir. 1994).

12  　　　Stellar Defendants argue that Kische has failed to state a fraud claim because

13  Kische asserts only "legal conclusions with a citation to an entire separate pleading and

14  one of its exhibits." (Stellar MTD at 29.)  In response, Kische asserts that the

15  declarations and exhibits incorporated into its complaint constitute factual allegations

16  against Stellar Defendants.  (Resp. to Stellar at 21.)  Specifically, Kische contends that an

17  email between Mr. Simsek and Mr. Costanza, in which they discuss the alleged

18  "fraudulent trademark assignment," contains facts that "clearly fulfill[] the first five

19  elements of fraud." (*Id.* at 22.)  Kische further states that Stellar Defendants made

20  misrepresentations of fact to the USPTO and to Kische's "service suppliers," retailers,

21  and customers.  (*Id.*)

22  //

1    The court concludes that because Stellar Defendants directed these alleged

2    misrepresentations of fact to entities and people other than Kische, Kische has alleged no

3    facts from which the court can reasonably infer that Stellar Defendants intended to induce

4    Kische to act on the statements, that Kische did not know the statements were false, that

5    Kische relied on these representations, or that Kische had a right to rely upon them. *See*

6    *Adams*, 192 P.3d at 902; (*see also* Am. Compl. ¶¶ 13.5-13.9 (asserting the fourth through

7    ninth elements of a fraud claim as conclusory factual allegations).)  Further, Kische has

8    not pleaded the content of the alleged misrepresentations with particularity, *Vess*, 317

9    F.3d at 1106, including what is false about the statement and why it is false, *Decker*, 42

10   F.3d at 1548.

11       To the extent Kische alleges that Stellar Defendants made false representations to

12   Kische about Kische's financial status, Kische also fails to state a claim.  (*See* Am.

13   Compl. ¶ 13.3.)  Again, these alleged misrepresentations alone, even if true, do not

14   support the reasonable inference that Stellar Defendants intended for Kische to act on

15   these misrepresentations, that Kische did not know the misrepresentations were false, or

16   that Kische relied on or had a right to rely on the statements.[16]  *See Adams*, 192 P.3d at

17   902; (*see also* Am. Compl. ¶¶ 13.5-13.9.)  The leaps of logic the court would have to

18   make to infer liability from the documents incorporated into Kische's complaint do not

19   //

20   _____

21   [16] Kische cites its Operating Agreement as support for its contention that it had a right to
     rely on Stellar Defendants' statements, but Kische does not point the court to the express
     provision establishing this right and therefore does not meet the Rule 9(b) pleading requirement.

22   (Am. Compl. ¶ 13.6.)

1    satisfy Federal Rule of Civil Procedure 8, let alone the Rule 9(b) particularity standard.

2    For these reasons, Kische has failed to state a fraud claim.

3         8.  Civil Conspiracy

4         The court discussed above the elements of civil conspiracy in determining whether

5    Kische had stated such a claim against Mr. Costanza.  *See supra* § III.B.2.  The court now

6    considers Kische's civil conspiracy allegations against Stellar Defendants.  Stellar

7    Defendants argue that "[t]his cause of action is another example of [Kische's] formulaic

8    recitation of the elements of a cause of action along with a legal conclusion that the

9    violation occurred."  (Stellar MTD at 30.)  Stellar Defendants further contend that it is

10   unclear against which Defendants Kische alleges the claim.  (*Id.*)  In response, Kische

11   argues that "it is unfair to require [Kische] to provide more specificity as to which of the

12   defendants took particular actions in furtherance of the conspiracy" (Resp. to Stellar at

13   23-24) and that it "has even provided evidence of the agreement between Mr. Simsek and

14   Mr. Costanza" (*id.* at 24).  In its complaint, Kische cites to Mr. Uysal's entire declaration

15   as support for its allegation that "Defendants entered into a civil conspiracy."  (Am.

16   Compl. ¶ 15.2.)

17        The court agrees that Kische has failed to state a civil conspiracy claim against

18   Stellar Defendants.  Kische does not make any factual allegations anywhere in its

19   complaint that leads the court to reasonably infer that Stellar Defendants entered into an

20   agreement.  Rather, Kische merely states the conclusion.  (*See* Am. Compl. ¶ 15.2

21   ("Defendants entered into a civil conspiracy.")  Legal conclusions are not factual

22   allegations, and alone cannot state a claim for which relief may be granted.  *See Iqbal*,

556 U.S. at 678.  Accordingly, the court dismisses Kische's civil conspiracy claim

against Stellar Defendants.

**D.     Leave to Amend**

As a general rule, when a court grants a motion to dismiss, the court should

dismiss the complaint with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*,

316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  The policy

favoring amendment is to be applied with "extreme liberality."  *Id.* at 1051.  In

determining whether dismissal without leave to amend is appropriate, courts consider

such factors as undue delay, bad faith or dilatory motive, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party

by virtue of allowing the amendment, and futility of amendment.  *Foman v. Davis*, 371

U.S. 178, 182 (1962).  Of these factors, "prejudice to the opposing party . . . carries the

greatest weight."  *Eminence Capital*, 316 F.3d at 1052.  Prejudice means "undue

difficulty in prosecuting a lawsuit as a result of a change in tactics or theories on the part

of the other party," *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645,

652 (W.D. Wash. 2015), and the burden is on the party opposing amendment to

demonstrate that it will be prejudiced by an amendment, *DCD Programs, Ltd. v.*

*Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  A proposed amendment is futile "if no set

of facts can be proved under the amendment to the pleadings that would constitute a valid

and sufficient claim or defense."  *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th

Cir. 1988).

//

1        Defendants argue that the court should dismiss Kische's claims with prejudice.

2   (*See* Stellar MTD at 31; Costanza MTD at 11.)  Stellar Defendants argue that leave to

3   amend would prejudice them because they "must . . . continue to move to dismiss these

4   insufficiently pled allegations" and that Kische's "inability to survive this motion to

5   dismiss would be a strong indication of the futility of the amendments." (*Id.*)  Costanza

6   makes a similar argument:  "Kische has previously amended its complaint and its

7   inability to cure the deficient claims against [Mr.] Costanza demonstrate those claims'

8   futility." (Costanza MTD at 11.)

9        The court agrees that further amendment of Kische's claims of legal malpractice

10  and breach of fiduciary duty against Mr. Costanza are futile.  Kische has now had two

11  opportunities to plead these claims and has failed to sufficiently do so both times.

12  Kische's continued failure to adequately plead these claims against Mr. Costanza

13  indicates that no set of facts exists under which Kische could prevail.  (*See* 6/29/16 Order

14  at 32.)

15       However, the court cannot conclude that amending Kische's other claims would

16  be futile.  Defendants fail to acknowledge that with the exception of Kische's false

17  advertising and legal malpractice claims, Kische has not previously amended any of its

18  other claims.  (*Compare* Am. Compl. *with* Compl.)  And as to the false advertising claim,

19  the court concluded in ruling on the first set of motions to dismiss that it could not

20  "determine the theory of liability under which Kische intend[ed] to proceed" in its first

21  complaint.  (6/29/16 Order at 8.)  Accordingly, the court cannot conclude that there is no

22  set of facts under which Kische may properly state these claims.

1    In addition, Stellar Defendants fail to meet their burden of establishing that

2    allowing Kische to amend its complaint would prejudice them.  *See DCD Programs*, 833

3    F.2d at 187.  Although courts have denied leave to amend where additional amendment

4    would require repeated motions to dismiss, they have typically done so after the plaintiff

5    has had an opportunity to cure the deficiencies in the complaint.  *See, e.g.*, *Ryan v.*

6    *Microsoft Corp.*, 147 F. Supp. 3d 868, 896-97 (N.D. Cal. Nov. 23, 2015) (denying leave

7    to amend and dismissing with prejudice where the plaintiff failed to cure previous

8    deficiencies in the complaint and additional amendment would require the defendant to

9    "file repeated motions to dismiss"); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016

10   WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (same); *Fox v. HCA Holdings, Inc.*, No.

11   15-CV-02073-LHK, 2015 WL 6744565, at *5 (N.D. Cal. Nov. 4, 2015) (dismissing

12   claim with prejudice where granting leave to amend would "require[e] Defendant to file

13   repeated motions to dismiss on claims that Plaintiff agrees are baseless").  As the court

14   stated above, Kische has not previously had the opportunity to amend most of its claims,

15   and Stellar Defendants do not substantively address how amendment of the claims Kische

16   asserted for the first time in its amended complaint will prejudice them.  For these

17   reasons, the court grants Kische leave to amend its claims for trademark infringement of

18   the Marseille and Dantelle marks, false advertising, trademark dilution, violation of the

19   CPA, fraud, and civil conspiracy.

20         The court also addresses Kische's request to delay any amendment of its

21   complaint.  (*See* Resp. to Costanza at 4.)  Kische states that "[c]omplete adjudication of

22   the action cannot be had without discovery," (Resp. to Stellar at 2; *see also* Resp. to

1   Costanza at 4), and moves for "an order permitting [Kische] to amend [its] amended

2   complaint pursuant to [Federal Rule of Civil Procedure] 15 once [Kische] is able to

3   review [Mr.] Costanza's client file, allegedly being withheld to protect Mr. Simsek's

4   attorney-client privilege" (Resp. to Costanza at 2).  Whether Kische can plausibly state a

5   claim for relief is distinct from whether this case can be fully adjudicated without first

6   completing discovery.  "The flaw in this argument is that a motion to dismiss tests the

7   sufficiency of a plaintiff's allegations, not [its] evidence." *Canzoni v. Countrywide Bank*,

8   No. C16-5239RBL, 2016 WL 3251403, at *1 (W.D. Wash. June 13, 2016).  A plaintiff

9   must be able to sufficiently state a claim for relief without the benefit of full discovery.

10  *See id.* (denying motion to continue pending motions to dismiss because discovery is

11  unnecessary when a plaintiff "need only *state* a plausible claim, not prove it, in order to

12  survive the motion"); *Harrell*, 2015 WL 5329779, at *14 (denying leave to conduct early

13  discovery where the plaintiff had not "explain[ed] how early discovery would assist him

14  in stating a claim").  In addition, it appears to the court that the parties are currently

15  engaged in ongoing discovery efforts pursuant to the court's scheduling order.  (*See*

16  Resp. to Stellar at 2, 4; Sched. Order (Dkt. # 34) at 1 (setting discovery cutoff for May 1,

17  2017).)  For these reasons, the court sees no need to order additional discovery or extend

18  the time for Kische to file a second amended complaint.

19         If Kische chooses to amend its complaint, the court instructs Kische to carefully

20  consider the deficiencies discussed above.  *See supra* §§ III.A, B.2, C.1-.4, .7-.8.  Failure

21  to cure those deficiencies in any amended complaint may be interpreted as an indication

22  that further amendment would be futile.  The court also notes that the scope of Kische's

ORDER- 42

1   leave to amend includes only its claims for trademark infringement of the Marseille and

2   Dantelle marks, false advertising, trademark dilution, violation of the CPA, fraud, and

3   civil conspiracy; Kische may not add claims.  Further, the court is unlikely to look

4   favorably on any motions for leave to amend the complaint to state entirely new causes of

5   action.  The court will not allow Kische to repeatedly plead new claims after failing to

6   adequately plead others.  Kische must file its amended complaint, if any, no later than

7   January 3, 2017.  If Kische fails to file an amended complaint by that deadline, the court

8   will dismiss without leave to amend all of Kische's claims except the trademark

9   infringement of the Kische mark, breach of contract, breach of fiduciary duty, tortious

10  interference, and conversion claims against Stellar Defendants.

11                                    **IV.    CONCLUSION**

12         For the foregoing reasons, the court GRANTS Mr. Costanza's motion to dismiss

13  (Dkt. # 54) and GRANTS in part and DENIES in part Stellar Defendants' motion to

14  dismiss (Dkt. # 56).  Kische's claims for trademark infringement of the Kische mark,

15  breach of contract, breach of fiduciary duty, tortious interference, and conversion claims

16  against Stellar Defendants remain, and the court GRANTS Kische leave to amend its

17  complaint with respect to Kische's claims for trademark infringement of the Marseille

18  and Dantelle marks, false advertising, trademark dilution, violation of the CPA, fraud,

19  and civil conspiracy.  Kische's amended complaint, if any, must be filed and served no

20  //

21  //

22  //

ORDER- 43

1  later than January 3, 2017.  The court DISMISSES WITH PREJUDICE Kische's claims

2  of legal malpractice and breach of fiduciary duty against Mr. Costanza.

3       Dated this 13th day of December, 2016.

4

5                  _____

6                  JAMES L. ROBART
                United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 44