UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| KISCHE USA LLC, | CASE NO. C16-0168JLR |
| | |
| Plaintiff, | ORDER ON MOTION FOR |
| v. | PARTIAL SUMMARY |
| | JUDGMENT |
| ALI SIMSEK, et al., | |
| | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Plaintiff Kische USA LLC's ("Kische") motion for partial

summary judgment against Defendant Ali Simsek.  (Mot. (Dkt. # 82).)  The court has

considered the parties' submissions in support of and in opposition to the motion, the

relevant portions of the record, and the applicable law.  Being fully advised,[1] the court

grants in part and denies in part Kische's motion for the reasons set forth below.

---

[1] Kische requests oral argument, but the court determines that oral argument would not be
helpful to its disposition of the motion.  (Mot. at 1); Local Rules W.D. Wash. LCR 7(b)(4).

## II.   BACKGROUND

This case involves allegations that Mr. Simsek abused his position as Kische's Chief Executive Manager.[2]  (*See* SAC (Dkt. # 75); *id.* ¶ 4.4, Ex. 3 ("OA") (Dkt. # 75-1) at 11.)  During the relevant period, Kische—formed by Mehmet Uysal, who resided in Turkey—"engaged in the business of importing high quality and widely known wom[e]n's apparel to the United State[s] since its formation in 2007."  (SAC ¶ 1.1.)  Kische brings claims for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1); common law trademark infringement; common law unfair competition; breach of contract; breach of fiduciary duty; tortious interference with business relations; conversion; and unjust enrichment.  (SAC ¶¶ 5.1-12.4.)  At issue here are the breach of contract and breach of fiduciary duty claims.  (*See* Mot.)

On February 8, 2010, Mr. Uysal, Kische's sole member, and Mr. Simsek executed an amended operating agreement ("the Operating Agreement").[3]  (OA at 30-31; Herschlip Decl. (Dkt. # 83) at 2, Ex. G ("Simsek Dep.") at 103:23-104:3.)[4]  The

---

[2] Kische also brings claims against Defendants Diane Walker and JD Stellar, LLC.  (*See* SAC ¶¶ 1.3-1.4.)  However, because Kische does not move for summary judgment against those defendants, the court does not recount Kische's allegations against them unless relevant to the motion against Mr. Simsek.

[3] Before they amended the Operating Agreement, Mr. Simsek and Mr. Uysal had been partners, with Mr. Simsek owning 20% of Kische and Mr. Uysal owning 80%.  (Simsek Decl. (Dkt. # 89) ¶ 7, Ex. A.)

[4] In connection with its reply brief, Kische submits additional excerpts of Mr. Simsek's declaration.  (2d Herschlip Decl. (Dkt. # 92-1) at 1-2, Ex. A.)  However, Kische has not properly authenticated those excerpts.  *See Orr v. Bank of Am., NT& SA*, 285 F.3d 764, 774 (9th Cir. 2002) ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it . . . includes the reporter's certification that the deposition is a true record of the testimony of the deponent.")  The court therefore does not consider the additional excerpts.

Operating Agreement appointed Mr. Simsek as Kische's Chief Executive Manager and delegated "day-to-day management" of Kische's operations to him. (OA at 11.) The Operating Agreement also called for Mr. Simsek to: (1) work exclusively for Kische (*id.*); (2) "act in the highest good faith at all times when carrying out his duties and responsibilities" (*id.* at 11-12); (3) obtain Mr. Uysal's prior written approval before entering into any contract with "aggregate liability or exposure" exceeding $10,000.00 or for "[a]ny act, transaction, or occurrence not in the course of [Kische's] ordinary business" (*id.* at 12-13); (4) give 30 days' notice before resigning (*id.* at 22); and (5) "maintain complete and accurate books and records of [Kische's] business and affairs" and promptly provide those records to Mr. Uysal (*id.* at 23).[5]

While acting as Kische's Chief Executive Manager, Mr. Simsek formed JD Stellar, LLC ("JD Stellar"), another women's clothing company; transferred the registration of a Kische design trademark—the Marseille mark—from Kische to JD Stellar; and amended the lease of Kische's warehouse space to name JD Stellar as the tenant. (Simsek Dep. at 31:11-13 (confirming that he was Kische's manager in October of 2013), 62:3-8 (confirming that at the time of the transfer of the Marseille mark to JD Stellar, Mr. Simsek acted as a manager for both JD Stellar and Marseille); SAC ¶ 4.38,

//

---

[5] Kische contends that the Operating Agreement specified that Mr. Simsek "was accountable" to Mr. Uysal, the "initial member." (Mot. at 7 (citing OA at 11).) However, the Operating Agreement states that Mr. Simsek "shall work full time and exclusively for the Company"—defined in the Agreement as Kische—and owes fiduciary duties to Kische and Mr. Uysal. (OA at 11-12.)

Ex. 32 (Dkt. # 75-2) ("Lease") at 1-2.)  These acts form the basis of Kische's breach of contract and fiduciary duty claims.

According to Mr. Simsek's version of events, Kische began to experience business difficulties in 2012, and Mr. Simsek had no choice but to take those actions.  (Simsek Decl. (Dkt. # 89) ¶¶ 19, 34 ("I started JD Stellar . . . . This was our contingency plan, should Kische totally collapse."); *see also* Walker Decl. (Dkt. # 90) ¶ 9.)  Specifically, Mr. Uysal lost control of the entity that manufactured clothing for Kische in Turkey, which made fulfilling clothing orders difficult for Kische.  (*Id.*; Foreman Decl. (Dkt. # 91) ¶ 8, Ex. D ("Uysal Dep.") at 74-1:2.)  Although Mr. Uysal partnered with another manufacturer, Sharda, that partnership proved difficult because Sharda had little experience manufacturing clothing (Simsek Decl. ¶ 25), and the relationship ended in September 2013 (*id.* ¶ 27).  Afterwards "over 100 Kische clothing orders went undelivered and unpaid for" in 2013 and 2014.  (*Id.* ¶ 29.)  Mr. Simsek tendered his resignation on March 17, 2014, but helped Kische fulfill orders for a period of time after that.  (SAC ¶ 4.44, Ex. 24 (Dkt. # 75-2) ("Letter") at 3-5; Simsek Decl. ¶ 42.)

Kische moves for summary judgment on the duty and breach elements of its contract and fiduciary duty claims and Mr. Simsek's affirmative defenses to those claims.  (Mot. at 3-4.)  Mr. Simsek opposes the motion.  (Resp. (Dkt. # 88).)

### III.    ANALYSIS

The parties first raise a number of evidentiary objections, which the court addresses before turning to the merits of Kische's motion.

//

**A.     Evidentiary Objections**

    1.  <u>Privileged Communications</u>

First, Mr. Simsek requests that the court strike as privileged Exhibits B and C to the declaration of Kische's counsel, Dubs Ari Tanner Herschlip.[6]  (Resp. at 7 n.1; Herschlip Decl. at 2, Exs. B, C.)  In its motion, Kische relies on these exhibits to demonstrate a valid contract between Kische and Mr. Simsek.  (*See* Mot. at 4-5, 16.)  Mr. Simsek, however, contends that the exhibits contain privileged communications between him and his attorney.  (Resp. at 7 n.1.)

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice" and "an attorney's advice in response to such disclosures."  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  The privilege is strictly construed because "it may impede full and free discovery of the truth."  *Skansgaard v. Bank of Am., N.A.*, No. C11-0988RJB, 2013 WL 828210, at *1 (W.D. Wash. Mar. 6, 2013).  The party asserting the privilege bears the burden of proving an attorney-client relationship and that the communications at issue are privileged.  *Ruehle*, 583 F.3d at 607.  Communications are privileged "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by a client, (6) are at [the client's] instance permanently protected (7) from disclosure by himself or by the

---

[6] A third exhibit, Exhibit A, is also an email between Mr. Simsek and his counsel.  (*See* Herschlip Decl. at 2, Ex. A.)  However, Mr. Simsek concedes that the email is not privileged because Mr. Simsek copied Mr. Uysal on the message.  (Resp. at 7 n.1.)

legal adviser, (8) unless the protection [is] waived." *Id.* (internal quotation marks omitted).

Mr. Simsek has not put forth sufficient argument or evidence demonstrating that the attorney-client privilege protects the communications Kische references. Indeed, Mr. Simsek raises the issue only in a short footnote without addressing the eight elements required to show that the privilege applies. (*See* Resp. at 7 n.1.) Thus, the court cannot conclude that the email exchanges are privileged. However, because neither party disputes the validity of the Operating Agreement and Kische has not properly authenticated the exhibits, the court does not consider the supposedly privileged communications in ruling on the motion for summary judgment. *See infra* § III.B.2; (*see also* Mot. at 4-5, 16 (citing the communications only to demonstrate that Kische and Mr. Simsek formed a valid contract).)

2. Authentication

Mr. Simsek further contends that Kische has not submitted a declaration "to authenticate the email records submitted in [its] Exhibits A, B, C, H, and I."[7] (Resp. at 28 n.4.) The first three exhibits are the emails between Mr. Simsek and his attorney, and the fourth and fifth exhibits are emails involving Mr. Simsek. (*See* Herschlip Decl. at 2-3, Exs. A, B, C, H, I.) Because neither the sender nor a recipient of the emails authenticates them, Mr. Simsek objects to the court considering them on summary judgment. (Resp. at 28 n.4.)

---

[7] Based on the context of Mr. Simsek's argument, the court concludes that he is objecting to Exhibits A, B, C, H, and I attached to Mr. Herschlip's declaration. (*See* Resp. at 28 n.4.)

In ruling on a motion for summary judgment, the court may not consider unauthenticated exhibits. *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment."); Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). "An attorney may submit a declaration as evidence to a motion for summary judgment." *Clark v. Cty. of Tulare*, 755 F. Supp. 2d 1075, 1083 (E.D. Cal. 2010). However, the attorney's declaration must be made on personal knowledge, and the attorney must be competent to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4) (stating that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated"). "Declarations by attorneys are sufficient only if the facts stated are matters of which the attorney has knowledge, such as matters occurring during the course of the lawsuit . . . ." *Tulare*, 755 F. Supp. 2d at 1084. "It is insufficient for a party to submit, without more, [a declaration] from her counsel . . . stating that [a document] is a 'true and correct copy.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of the motion for summary judgment, Mr. Herschlip provides a declaration in which he attests that Exhibits A, B, C, H, and I are "true and correct" copies of the various email exchanges involving Mr. Simsek. (*See* Herschlip Decl. at 1-2.) Mr. Herschlip is not, however, a party to any of the emails, and there is no

indication that he otherwise has personal knowledge regarding their subject matter.  (*See id.*, Exs. A, B, C, H, I.)  Thus, although he can attest that the emails exist, he is not competent to testify that the exhibits are true and correct copies of the emails.  *Orr*, 285 F.3d at 773; *Tulare*, 755 F. Supp. 2d at 1084.  The court concludes that Kische has not properly authenticated the emails and will not consider them as evidence in support of Kische's motion.

     3.  <u>Motion to Strike</u>

For its part, Kische moves to strike a number of statements as "immaterial, impertinent, scandalous, and . . . alleged solely to create prejudice."  (Reply (Dkt. # 92) at 12.)  Specifically, Kische requests that the court strike the following statements from Mr. Simsek's declaration and his response to the summary judgment motion:

- "In or about January 2014, I received a phone call informing me that Mr. Uysal had been shot in Turkey.  I was told that this happened due to his unpaid debts."  (Simsek Decl. ¶ 36.)

- "The last time I spoke with Mr. Uysal was in March 2014, when Mr. Uysal's wife threatened to have my legs broken through her mafia connections."  (*Id.*)

- "Based on the Turkish records I have seen showing his extensive debts and Mr. Uysal's insistence that we not send money transfers to Turkey under his name, I know now that Mr. Uysal was unable to own a company in Turkey, so he opened a new company named Capraz in the name of his father-in-law, Abdullah Kagitkeser."  (*Id.* ¶ 21.)

- "In October 2012, Mr. Uysal unexpectedly informed me that Capraz needed to close, offering no further details.  I know now, after viewing Turkish records showing that Mr. Kagitkeser lost his ownership in the company, that again, the company's assets were seized by Turkish authorities because of extensive debts."  (*Id.* ¶ 22.)

- " . . . Mr. Uysal's misconduct in Turkey . . . ."  (Resp. at 17.)

- "Kische's owners' illegal actions in Turkey rendering Kische unable to legally do its business . . . ." (*Id.* at 16.)

- "Ms. Walker also received several threatening emails and phone calls from Mr. Uysal." (*Id.* at 13.)

Kische invokes Federal Rule of Civil Procedure 12(f) as its basis for striking these statements and contends that they are inadmissible under Federal Rules of Evidence 402, 403, 404, 701, 802, and 1002. (Reply at 13); *see also* Fed. R. Evid. 402 (stating that "[i]rrelevant evidence is not admissible"); Fed. R. Evid. 403 (stating that relevant evidence may be excluded where its probative value is substantially outweighed by the danger of a number of factors); Fed. R. Evid. 404 (stating that "[e]vidence of a person's character . . . is not admissible to prove that on a particular occasion the person acted in accordance with the character"); Fed. R. Evid. 701 (stating the requirements for opinion testimony by a lay witness); Fed. R. Evid. 802 (stating the rule against hearsay); Fed. R. Evid. 1002 (stating the best evidence rule).

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Here, Kische "has fallen victim to one of the classic blunders: attempting to extend Rule 12(f)'s striking power beyond pleadings." *United Nat'l Ins. Co. v. Assurance Co. of Am.*, No. 2:10-CV-01086-JAD, 2014 WL 4960915, at *1 (D. Nev. June 4, 2014). "Rule 12(f) cannot serve as the procedural vehicle for striking language contained in motion papers." *Parker v. CMRE Fin. Servs., Inc.*, No. 07cv1302 JM(AJB), 2007 WL 3276322, at *4 (S.D. Cal. Nov. 5, 2007) (citing *Sidney-Vinstein v. A.H. Robins*

*Co.*, 697 F.2d 880, 885-86 (9th Cir. 1983) (stating that "[u]nder the express language of the rule, only pleadings are subject to motions to strike")).  In addition, the Federal Rules of Evidence provide no basis for striking the challenged statements in Mr. Simsek's briefing because arguments made in opposition to a motion for summary judgment are not evidence.  *See Estrella v. Brandt*, 682 F.2d 814, 819-20 (9th Cir. 1982) ("Legal memoranda . . . are not evidence . . . ."); *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("[A]rguments and statements of counsel are not evidence . . . .").

Kische may, however, object to evidence submitted in response to a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  On summary judgment, the court focuses on the admissibility of the proffered evidence's contents, rather than its form.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("[T]he evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial.").  The court therefore addresses each of Kische's evidentiary objections.  Because Kische cites several grounds for the objections but does not clearly tie any of those grounds specifically to the challenged statements, the court where necessary infers to the best of its ability upon which grounds Kische objects to each statement.  (*See* Reply at 14.)

a. Relevance

Kische's objections to the statements on the basis of Federal Rules of Evidence 401, 402, and 403 are "inapplicable at the summary judgment stage." *Montoya v. Orange*

*Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013); *see also City of*

*Tombstone v. United States*, No. CV-11-00845-TUC-FRZ, 2015 WL 11120851, at *3 (D.

Ariz. Mar. 12, 2015) (same); *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d

1077, 1096 (D. Or. 2015) (holding that objections under Rules 401, 402, and 403 are

"duplicative of the summary judgment standard").  Because a court may grant summary

judgment only when there is no genuine dispute of material fact, "relevance objections

are redundant." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal.

2006).  In addition, objections based on Rule 403 are more properly raised in the context

of trial.  *See Montoya*, 987 F. Supp. 2d at 994.  For these reasons, the court overrules

Kische's relevance objections.

       *b.  Character*

       Rule 404 prohibits "[e]vidence of a person's character or character trait" when

used "to prove that on a particular occasion the person acted in accordance with the

character or trait."  Fed. R. Evid. 404(a)(1).  However, evidence of a crime, wrong, or

other act may be admissible to prove "motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Kische contends that the statements in Mr. Simsek's declaration "amount to scandalous

name-calling through negative associations with debt and mafia."  (Reply at 14.)  The

court concludes that Mr. Simsek does not offer these statements to prove Mr. Uysal's

character, but instead offers them as evidence to support his argument regarding

nonperformance under the contract due to impossibility.  (*See* Resp. at 18-19 (arguing

//

that performance under the contract became impossible due to Kische's insolvency).) For this reason, the court overrules Kische's objection.

### c. Lay Testimony

"[T]estimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Federal Rule of Evidence] 702." Fed. R. Evid. 701. An opinion is rationally based on the witness's perception "where it is based upon personal observation and recollection of concrete facts." *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2015). Speculative lay witness testimony is insufficient to establish a genuine dispute of material fact in opposition to summary judgment. *See Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1255 (9th Cir. 1982) (holding that lay witness affidavits were "too speculative and insubstantial" to establish a genuine dispute of material fact).

Despite the speculative nature of Mr. Simsek's statements regarding the status of Mr. Uysal's business dealings in Turkey, Mr. Simsek does not actually rely on these statements in opposing Kische's motion. (Resp. at 17-28 (putting forth argument in opposition to summary judgment).) At most, Mr. Simsek argues only that Kische experienced financial troubles due to Mr. Uysal's dealings in Turkey. (*Id.* at 17.) Thus, the statements do not bear on the court's determination of whether there is a genuine dispute of material fact, and accordingly, the court overrules the objection.

//

*d. Hearsay*

"To defeat summary judgment, [a party opposing the motion] must respond with more than mere hearsay . . . ." *Orr*, 285 F.3d at 783. However, the court does not rely on any of these statements as creating a genuine dispute of material fact that defeats summary judgment. *See supra* § III.B.2. For example, Mr. Simsek's statement that someone shot Mr. Uysal in Turkey does not factor into the court's analysis. *See id.* In addition, the court also does not rely on the Turkish records referenced in two of the statements. *See id.* For these reasons, the court overrules Kische's hearsay objections.

*e. Best Evidence*

The best evidence rule applies where a party attempts to prove the content of a writing. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."); *Richardson v. CBS Studios Inc.*, No. CV 12-7925 ABC (SHx), 2013 WL 12120265, at *5 (C.D. Cal. Sept. 25, 2013) ("The rule's application turns on whether contents are sought to be proved.") (internal quotation marks omitted). Accordingly, courts overrule best evidence objections when "the objected-to testimony does not purport to offer the contents of a document." *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1034 (C.D. Cal. Aug. 16, 2013).

Kische's objection appears related to Mr. Simsek's statements that based on his review of certain documents, he concludes that Mr. Uysal had significant debts in Turkey. (Simsek Decl. ¶¶ 21-22.) Mr. Simsek is not, however, offering that evidence to

//

prove the contents of the underlying documents.  (*See id.*)  The best evidence rule

therefore does not apply, and the court overrules the objection.

In summary, the court denies Mr. Simsek's request for a determination that the

two exhibits containing conversations between Mr. Simsek and his attorney are

privileged, declines to consider Kische's unauthenticated exhibits, and overrules as

inapplicable or irrelevant Kische's evidentiary objections.

**B.      Motion for Summary Judgment**

1.   Legal Standard

"A party claiming relief may move the court to render partial summary judgment

to dispose of 'part of the claim' pursuant to Federal Rule of Civil Procedure 56(a)."

*Findlay v. Alaska Air Grp., Inc.*, No. 2:10–cv–01461–ECR–RJJ, 2011 WL 2710499, at

*2 (D. Nev. July 12, 2011).  Summary judgment is appropriate if the evidence shows

"that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is

"material" if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient

evidence for a reasonable fact finder to find for the non-moving party."  *Far Out Prods.,*

*Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine issue of

material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.

If the moving party does not bear the ultimate burden of persuasion at trial, it can show

the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id*. at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

//

2.  <u>Motion for Summary Judgment</u>

Kische moves for summary judgment on the duty and breach element of its

contract and fiduciary duty claims.  (*See* Mot. at 15.)  It contends that there is no genuine

dispute of material fact that Mr. Simsek owed duties under the contract and the law, and

Mr. Simsek breached those duties in various ways.  (*See id.* at 19-20.)  The court first

addresses whether Mr. Simsek owed Kische duties by virtue of the Operating Agreement

and his status as a fiduciary, followed by whether Mr. Simsek breached those duties.

*a.  Duty*

To prevail on a breach of contract claim, a plaintiff must prove that the contract

imposed a duty that the defendant breached, and the breach proximately caused the

plaintiff damages.[8] *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9

(Wash. 1995).  Similarly, to prevail on a claim for breach of fiduciary duty, a plaintiff

must demonstrate (1) a fiduciary relationship that gave rise to a duty of care from the

defendant to the plaintiff; (2) an act or omission by the defendant that breached the duty

_____

[8] Parties form a valid contract when there is mutual assent, offer, acceptance, and
consideration.  *In re Marriage of Obaidi & Qayoum*, 226 P.3d 787, 791 (Wash. Ct. App. 2010).
"In order for a valid contract to form, the parties must objectively manifest their mutual assent to
the essential terms of the contract."  *Mukilteo Ret. Apts., L.L.C. v. Mukilteo Investors L.P.*, 310
P.3d 814, 822 (Wash. Ct. App. 2013).  Kische bears the burden of establishing a valid contract.
*Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 162 P.3d 1153, 1165 (Wash. Ct. App.
2007) ("The burden of proving the existence of a contract is on the party asserting its
existence.").  Here, even though Mr. Simsek pled lack of consideration as an affirmative defense
(2d Answer ¶ 128), for purposes of this motion, Mr. Simsek does not dispute that a valid contract
existed at the time of the alleged events giving rise to Kische's claims (*see* Resp. at 17 ("[I]t
should be noted that Mr. Simsek is not challenging the existence of the Amended Operating
Agreement, and the fact that it set forth various obligations with respect to his employment with
Kische.")); Fed. R. Civ. P. 56(e)(2) (stating that a court may consider a fact undisputed for the
purposes of the summary judgment motion if a party does not "properly" challenge that fact).
Thus, there is no genuine dispute of material fact as to the threshold issue of validity.

of care; and (3) damages (4) proximately caused by the defendant's breach. *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002).

Neither party disputes that Mr. Simsek owed Kische duties under the contract and arising in law from Mr. Simsek's position as a fiduciary. (*See* Resp. at 17 ("[I]t should be noted that Mr. Simsek is not challenging . . . the fact that [the Operating Agreement] set forth various obligations with respect to his employment with Kische."), 19 ("The Amended Operating Agreement did set forth a duty of loyalty . . . .").) In addition, the Operating Agreement clearly imposed duties on Mr. Simsek as Kische's Chief Executive Manager (*see, e.g.*, OA at 11-22), and Mr. Simsek was in a fiduciary relationship with Kische, *Micro Enhancement Int'l v. Coopers & Lybrand*, 40 P.3d 1206, 1217 (Wash. 2002) (holding that a fiduciary relationship arises as a matter of law in the principal-agent context). Accordingly, the court grants Kische's motion on this element as to the duties under the contract to (1) work exclusively for Kische (*id.*), (2) obtain Mr. Uysal's permission "prior to any action with a financial repercussion surpassing $10,000[.00] or outside the day to day course of Kische's business" (*id.*), (3) maintain complete business records and furnish the records to Mr. Uysal (*id.*), (4) provide 30 days' notice before resigning (*id.*), and (5) exercise the "highest fiduciary duty of loyalty" (*id.*), and duties arising as a matter of law by virtue of Mr. Simsek's fiduciary status.

Having granted summary judgment on this element, the court now addresses whether Kische meets its burden of demonstrating as a matter of law that Mr. Simsek breached these duties.

### b. Breach of the Operating Agreement

Kische argues that Mr. Simsek breached the Operating Agreement by (1) working for JD Stellar while continuing to work for Kische[9] (*id.* at 19); (2) failing to obtain Mr. Uysal's permission "prior to any action with a financial repercussion surpassing $10,000[.00] or outside the day to day course of Kische's business" (*id.* at 19-20); (3) failing to maintain complete business records and furnishing the records to Mr. Uysal (*id.* at 20); (4) failing to provide 30 days' notice before resigning (*id.*); and (5) falling short of the contractually imposed "highest fiduciary duty of loyalty" (*id.*).

Mr. Simsek responds that the doctrine of impossibility discharged him from the Operating Agreement's exclusivity provision and that Kische provides insufficient evidence to prove the alleged breaches of the Operating Agreement occurred. (*Id.* at 17-22.)

### i. Formation of JD Stellar

The court first takes up the Operating Agreement's exclusivity provision. (*See* OA at 11.) Mr. Simsek argues that he was discharged from his duty of exclusivity under the Operating Agreement—and therefore did not breach that agreement—due to the doctrine of impossibility. (Resp. at 19.) He argues that "Kische destroyed multiple basic assumptions of the contract," including that Kische would remain "solvent," pay Mr.

//

---

[9] The parties imprecisely address the duty this contractual provision imposes, referring to it at times as a duty of exclusivity and as a duty of loyalty at other times. (*See* Mot.; Resp.) The court refers to it as a duty of exclusivity to distinguish it from the independent duty of loyalty both parties address when discussing Kische's fiduciary duty claim.

Simsek, "be capable of doing business and generate income," pay its expenses, and not require Mr. Simsek to incur "personal debt for Kische's expenses." (*Id.*)

"The doctrine of supervening impossibility or impracticability of performance discharges a party from contractual obligations when a basic assumption of the contract is destroyed or deteriorated, such destruction or deterioration makes performance impossible or impractical, and the party seeking relief does not bear the risk of the unexpected occurrence." *Pub. Util. Dist. No. 1 of Lewis Cty. v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1204 (Wash. 1985). Under this doctrine, performance may become impossible or impractical "because of extreme and unreasonable difficulty, expense[,] or injury." *Id.* "[M]ere financial difficulty is not sufficient to prove . . . impossibility of performance."[10] *Tacoma Northpark, LLC v. NW, LLC*, 96 P.3d 454, 457 (Wash. Ct. App. 2004).

//

//

---

[10] Neither party addresses whether the doctrine is an affirmative defense that a defendant must plead and prove. *See* Fed. R. Civ. P. 8(b)(1)(A) ("In responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it . . . ."); Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."). However, although a party generally waives affirmative defenses if it does not plead them, a party may plead an affirmative defense for the first time in response to a motion for summary judgment unless it prejudices the plaintiff. *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997); *United States v. King Mtn. Tobacco Co., Inc.*, No. 2:12-CV-3089-RMP, 2014 WL 4264803, at *6 (E.D. Wash. Aug. 28, 2014) (finding prejudice where the defendant raised an affirmative defense in response to a motion for summary judgment and the plaintiff had not had an opportunity to conduct discovery on that defense). Kische does not argue that it is prejudiced by Mr. Simsek asserting this argument. (*See* Mot.; Reply.) In addition, the court notes that Mr. Simsek does not squarely raise any other contract defenses in opposition to summary judgment. (*See generally* Mot.)

The court concludes that Mr. Simsek's impossibility argument fails.[11]  First,

Kische's financial difficulties did not make Mr. Simsek's duty to exclusively work for

Kische impossible or impractical.  (*See* OA at 11 (stating that Mr. Simsek had a duty not

to "maintain any outside occupations," have any interest in any other business, and not

"engage in any other endeavors").)  Instead, Mr. Simsek could have continued to fulfill

this duty under the Operating Agreement while addressing the financial difficulty

Kische's situation imposed by, for example, giving 30 days' notice of his resignation and

ending his service as Chief Executive Manager.  (*See* OA at 22.)  Although Mr. Simsek

was in a difficult position because he personally assumed liability for some of Kische's

debts, the Operating Agreement did not obligate him to do so.  (*See generally* OA; *but

see* Simsek Decl. ¶ 9 ("Mr. Uysal directed me to execute Kische's financing agreement

with FinanceOne, which I signed as the personal guarantor with a 'Continuing

Guarantee' that I was personally liable for Kische's indebtedness.").)  Moreover, Mr.

Simsek points to no authority supporting his contention that Mr. Uysal's request for Mr.

Simsek to take on personal responsibility for some of Kische's debts—an

extracontractual request falling outside the Operating Agreement's terms—made Mr.

Simsek's performance impossible.  (*See generally* Resp.; Simsek Decl. ¶ 9.)

---

[11] Kische argues that Mr. Simsek is equitably estopped from denying that an enforceable contract exists because he benefitted from the contract by "taking a substantial salary."  (Reply at 10.)  Equitable estoppel requires "(1) an admission, statement[,] or act inconsistent with a claim afterwards asserted, (2) action by another in reliance upon that act, statement[,] or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement[,] or admission."  *Parmelee v. Clarke*, 201 P.3d 1022, 1027-28 (Wash. Ct. App. 2008).  However, Kische identifies no action it took in reliance upon Mr. Simsek's allegedly inconsistent act, statement, or admission.  (*See* Reply at 10.)  For this reason, the court concludes that Mr. Simsek is not equitably estopped from making the impossibility argument.

Furthermore, Mr. Simsek provides only conclusory argument that Kische's financial difficulties destroyed the basic assumptions of the Operating Agreement.  A "'[b]asic assumption' means . . . the basis upon which the parties contract." *In re P'ship of Rhone & Butcher*, 166 P.3d 1230, 1234 (Wash. Ct. App. 2007); *see also Felt v. McCarthy*, 898 P.2d 315, 318 (Wash. Ct. App. 1995) (stating "the requirement that both parties enter into the contract with the same basic assumption").  For example, Mr. Simsek contends Kische's ability to do business and remain financially viable were basic assumptions of the contract.  (Resp. at 19.)  However, Mr. Simsek puts forth no evidence that he and Kische entered the Operating Agreement on the assumption that Kische would continue to do business in perpetuity and remain financially sound at all times. *See Felt*, 898 P.2d at 318.  Mr. Simsek's argument that it was a basic assumption of the Operating Agreement that he would not be subject to personal liability for Kische's debts also lacks merit because Mr. Simsek had no duty under the Operating Agreement to assume such liability, and there is no evidence that a lack of personal liability was a basic assumption of both contracting parties.  (*See generally* OA); *see Felt*, 898 P.2d at 318.  Finally, although the Operating Agreement sets forth Mr. Simsek's salary, he provides the court with no evidence or authority that a failure to pay his salary discharged him of his duty to work exclusively for Kische while he acted as its Chief Executive Manager.  (*See* Resp. at 19 (stating only that Kische "destroyed multiple basic assumptions of the contract," including "that Kische would pay [Mr.] Simsek").)  For these reasons, the court concludes that impossibility of performance did not excuse Mr. Simsek's duty of

//

exclusivity. The court therefore proceeds to analyze whether Kische is entitled to summary judgment as to this duty.

The Operating Agreement required Mr. Simsek to "work full time and exclusively for" Kische, not to "maintain any outside occupations," and not to "engage in any other endeavors" except for certain charitable endeavors. (OA at 11.) The undisputed evidence before the court shows that Mr. Simsek formed JD Stellar while he continued to work for Kische. Mr. Simsek admits that a certificate of formation for JD Stellar was issued on October 11, 2013, identifying him as JD Stellar's manager (2d Answer (Dkt. # 79) ¶ 36; *see also* SAC ¶ 4.26, Ex. 21 (Dkt. # 75-1) ("Cert.") at 58-59; Simsek Decl. ¶ 34 ("Ms. Walker and I started JD Stellar LLC, obtaining a Certificate of Formation in October 2013.")), which was before he resigned from Kische in March 2014 (Letter at 3). In his deposition, Mr. Simsek also confirmed that he had not resigned before forming JD Stellar. (Simsek Dep. 26:2-11 (confirming that he began operating JD Stellar in or around October 2013), 33:20-22.) Based on this evidence, Kische has met its burden of demonstrating the absence of a genuine dispute regarding whether Mr. Simsek worked exclusively for Kische while serving as Chief Executive Manager.

Mr. Simsek contends that he did not breach the exclusivity agreement because JD Stellar did not compete with Kische. (Resp. at 23.) Specifically, he argues that Kische puts forth no evidence that "Kische was capable in any way of completing delivery of clothing during the existence of JD Stellar" or that "JD Stellar ever competed for clothing sales with Kische." (Resp. at 23.) Even if this were true, however, the Operating Agreement did not specify that its exclusivity provisions extended only to competing

companies. (*See* OA at 11.) Rather, the Operating Agreement's exclusivity provision required Mr. Simsek to "work full time and exclusively" for Kische, "not maintain any outside occupations . . . or have directly or indirectly any interest in any other [non-public] business," and "not engage in any other endeavors." (*Id.*) Thus, the Operating Agreement prohibited Mr. Simsek's work for JD Stellar, even if that company did not directly compete with Kische. Thus, based on the undisputed evidence that Mr. Simsek formed JD Stellar and acted as its manager while working for Kische, the court grants Kische's motion for summary judgment on this theory of breach.

ii. Permission for Matters Involving More than $10,000.00 or Occurring Outside Kische's Ordinary Business

Kische next contends that Mr. Simsek breached the Operating Agreement by failing to obtain Mr. Uysal's permission before taking "any action with a financial repercussion surpassing $10,000[.00] or outside the day to day course of Kische's business." (Mot. at 19-20.) Kische argues that Mr. Simsek violated this provision by failing to obtain permission for (1) "his formation and work for the benefit of JD Stellar," (*id.* at 22), (2) assigning the Marseille mark (*id.* at 20), (3) assigning the warehouse lease (*id.*), and (4) notifying "Kische clients and employees that orders were transitioning to JD Stellar" (*id.* at 22). Mr. Simsek argues that Kische provides no evidence by which to evaluate whether the value of the Marseille mark or the lease exceeded $10,000.00. (Resp. at 20.) Kische fails to meet its summary judgment burden because it fails to put forth evidence demonstrating that (1) Mr. Simsek did not have permission for the actions

//

ORDER - 23

taken or that (2) the actions were outside the ordinary course of business or involved

contracts exceeding $10,000.00.

The court notes at the outset that Kische states in conclusory fashion only that "[o]ne example" of Mr. Simsek's "deliberate failure to obtain [Mr.] Uysal's written authorization . . . was his formation and work for the benefit of JD Stellar." (Mot. at 22.) Accordingly, it is not clear specifically how Kische contends that Mr. Simsek violated the permission provisions of the Operating Agreement by forming JD Stellar. However, to the extent Kische intends to argue that Mr. Simsek breached the provisions regarding transactions exceeding $10,000.00 and matters falling outside the ordinary course of business, Kische's argument fails.

First, there is no evidence before the court that in forming JD Stellar, Mr. Simsek entered into "[a]ny contract as to which the aggregate liability or exposure to [Kische] exceed[ed] $10,000[.00]." (*See* OA at 13.) Second, the provision requiring Mr. Simsek to obtain Mr. Uysal's permission for "[a]ny act, transaction, or occurrence not in the course of [Kische's] ordinary business, as such business shall have been usually carried out by [Kische]" does not apply to this action. (*Id.*) Because the Operating Agreement only limited Mr. Simsek's responsibilities as related to actions on Kische's behalf, forming JD Stellar—which he did not do on Kische's behalf—did not require Mr. Uysal's permission, even if it violated other provisions of the Operating Agreement. *See* OA at 11 (specifying the Chief Executive Manager's "management powers [in] the day to day business of the Company"); *supra* § III.B.2.b.ii. Finally, Kische puts forth no

//

evidence to demonstrate that Mr. Simsek did not have the necessary permission.  (*See*

Mot. (failing to cite evidence related to a lack of permission).)

Kische's argument regarding the March 13, 2014, assignment of the Marseille

mark fares no better.  (*See* SAC ¶ 4.23, Ex. 18 (Dkt. # 75-1) at 55 (certificate of

assignment).)  When asked during his deposition whether he had permission to make the

assignment, Mr. Simsek stated only that "except the law requires actually that it should

be asked of the owners."  (Simsek Dep. at 61:6-7.)  Because the court is required to view

all evidence in the light most favorable to Mr. Simsek, the ambiguity of this statement—

which requires an inference to conclude that Mr. Simsek had not obtained permission—

does little to advance Kische's position.  However, even assuming that Mr. Simsek failed

to obtain permission, the only evidence Kische puts forth to demonstrate the value of the

Marseille mark is a chart entitled, "Kische Sales Summary for years 2008 to 2014."

(SAC ¶ 4.51, Ex. 10 (Dkt. # 75-1) at 41.)  Kische correctly points out that the chart shows

Kische's sales exceeded $5 million in fiscal year 2013 (Mot. at 20), but the chart does not

definitively show that assignment of the Marseille mark amounted to a transaction

involving more than $10,000.00 (*see* SAC ¶ 4.51, Ex. 10 at 41 (failing to reference the

Marseille mark or otherwise parse the sales by how they were generated)).  In addition,

although the Operating Agreement required permission for transactions outside Kische's

day-to-day business, Kische puts forth no argument or evidence regarding whether

transfer of the Marseille mark fell outside ordinary operations.  (*See* Mot.)  For these

reasons, the court denies summary judgment on this issue.

//

Kische further argues that Mr. Simsek breached these provisions by amending Kische's warehouse lease agreement.  (*See* Mot. at 22; Lease at 1-2.)  The amendment removed Kische from the lease to add JD Stellar as the tenant.  (Lease at 1.)  Although the document unequivocally shows that Mr. Simsek amended the lease, Kische puts forth no evidence showing that Mr. Uysal did not give Mr. Simsek permission to execute this amendment.  (*See generally* Mot. (failing to cite evidence showing a lack of permission).) Although it may be unlikely that Mr. Uysal would have given Mr. Simsek permission to transfer the lease to an alleged competitor, Kische must show that no genuine dispute exists regarding whether Mr. Uysal gave his permission, and it fails to do so here.  For these reasons, the court denies summary judgment on this alleged breach.

Finally, Kische's argument regarding Mr. Simsek's communications with Kische clients and employees fails for the same reason.  Kische provides no evidence showing that Mr. Uysal did not give Mr. Simsek permission to transition orders to JD Stellar.  (*See* Mot. (failing to cite evidence to support its argument that "[a]ll of these actions were done without [Mr.] Uysal's prior written permission")).)  Rather, Kische cites to an unauthenticated email exchange in which Ms. Walker informs Nordstrom buyers that she and Mr. Simsek are transitioning from Kische to JD Stellar and moving the product line.[12]  (SAC ¶ 4.40, Ex. 37 (Dkt. # 75-2) at 1.)  As discussed above, the court may not consider unauthenticated evidence in support of summary judgment, *see supra* § III.A.2. But even if the court were to consider the email exchange, however, it shows only that

---

[12] The email to which Kische cites is attached to its second amended complaint, and Kische offers no means of authenticating the email.  (*See* SAC ¶ 4.40; Dkt.)

Ms. Walker and Mr. Simsek transferred the orders to JD Stellar, not that they lacked permission to do so. Thus, Kische has not met its burden of demonstrating that Mr. Simsek breached the Operating Agreement in this way.

iii. Incomplete Recordkeeping or Failure to Provide Records

Kische next contends that Mr. Simsek breached the Operating Agreement by failing to maintain complete company records and provide those records to Mr. Uysal. (Mot. at 20.) Kische argues that "when [Mr.] Uysal requested copies of the records, the request was denied and no records were provided" (*id.*) and that Mr. Simsek shielded records from Mr. Uysal by requesting a password change for a database (*id.* at 23).

Kische's motion fails because it offers only unauthenticated evidence in support of these summary judgment arguments. *See supra* § III.A.2; (Herschlip Decl. at 2-3, Ex. H, Ex. I at 44). However, even if the court were to consider the exhibits, they fall short of demonstrating the necessary absence of a genuine dispute of material fact. For example, in the January 2014 email among a director of an outside clothing buyer and Kische and JD Stellar representatives, Mr. Simsek instructs Kische employee Brittney Pineda that a buyer should make payment to JD Stellar. (Herschlip Decl. at 2-3, Ex. I at 44.) In response, Ms. Pineda informed the buyer to "use Dantelle as the brand name and JD Stellar LLC as the pay to." (*Id.*) The email exchange does not demonstrate that Mr. Simsek failed to maintain any business records or provide records to Mr. Uysal. (*See id.*) Indeed, the exchange does not appear to have anything to do with company recordkeeping and does not reference Mr. Uysal. (*See id.*)

//

Moreover, Mr. Simsek offers evidence to the contrary, attesting that he kept Mr. Uysal "apprised of all major aspects of the business, and provided him with any records that he requested." (Simsek Decl. ¶ 15.)  He further states that he does not "recall any instances in which there was ever a dispute about [Mr. Uysal's] ability [to] access things like business records, order information, or banking records." (*Id.*)  He further attests that "Mr. Uysal would sometimes ask about [a] FinanceOne [loan] and what was being paid to them," and he "would either direct him to the information or provide it to him without issue." (*Id.*)

In the other unauthenticated exhibit, Mr. Simsek appears to request a password change for a database, stating that there was "[n]o need for Turkey to know the password anymore." (Herschlip Decl. at 2-3, Ex. H at 1.)  Although the email may suggest that Mr. Simsek intended the password change to shield information from Mr. Uysal, who resided in Turkey, when viewed in the light most favorable to Mr. Simsek, the email could also be read as requesting the change for some other reason.  In addition, Mr. Simsek attests that Mr. Uysal was not denied access to any records.  (Simsek Decl. ¶ 15.)  He further states that because the clothing manufacturer Sharda's employees were making errors in the system, he "directed Kische employees to ensure that Sharda no longer had access." (*Id.* ¶ 30.)  Accordingly, Kische fails to meet its burden of demonstrating as a matter of law that Mr. Simsek breached the recordkeeping duty.

### iv. 30 Days' Notice Before Resignation

Kische also argues that Mr. Simsek breached the Agreement by failing to provide 30 days' notice for his resignation.  (Mot. at 20.)  Rather than giving the required notice,

1  Mr. Simsek resigned immediately upon tendering a resignation letter, according to

2  Kische.[13]  (*Id.*)

3       On March 17, 2014, Mr. Simsek sent Mr. Uysal a resignation letter.  (*See* Letter at

4  3.)  Despite Kische's characterization that Mr. Simsek immediately resigned thereafter,

5  the letter does not state that he was resigning immediately.  (*See id.* at 3-5.)  Rather, the

6  letter stated that he was "willing to finish all the remaining orders" (Letter at 3) and

7  repeatedly referenced May 15, 2014—nearly two months after the letter—as the date by

8  which he anticipated orders on Kische's behalf would be finished (*id.* at 3-5).  In

9  addition, Mr. Simsek attests that he continued to work for Kische more than 30 days after

10  sending the letter.  Specifically, he states that he "made [him]self available for several

11  months such that [he] assisted[] to help save what was left of Kische and Mr. Uysal's

12  reputations and finish the orders that could be finished with remaining Kische back

13  stock."  (Simsek Decl. ¶ 42.)  Mr. Simsek's testimony and the fact that the letter

14  references tasks that he intended to undertake on Kische's behalf until May 15, 2014,

15  creates a genuine dispute of material fact regarding when Mr. Simsek's resignation

16  became effective.  Accordingly, the court denies Kische's motion for summary judgment

17  on this breach.

18

19  _____

   [13] Kische also asserts, without further argument, that by tendering the resignation letter,
20  Mr. Simsek breached the Operating Agreement's prohibition on "obtain[ing] advantage in
   [Kische's] affairs by engaging in any form of misconduct, concealment[,] or threats."  (*Id.*)  To
21  the extent Kische intends to move for summary judgment on this basis, the court concludes that
   Kische fails to meets its burden as to this argument.  The letter does not unequivocally
22  demonstrate that Mr. Simsek sought to obtain an advantage by engaging in misconduct,
   concealment, or threats.  (*See generally* Letter.)

In sum, the court grants Kische's motion on the breach element of its theory that Mr. Simsek breached the exclusivity provision of the Operating Agreement. The court denies Kische's motion on the breach element as to the other Operating Agreement provisions discussed above. The court now addresses Kische's motion for summary judgment on the breach element of Kische's fiduciary duty claim.

### c. Breach of Fiduciary Duty

Kische also moves for summary judgment on the breach element of its fiduciary duty claim, which arises both from the Operating Agreement and by operation of law. (*See* Mot. at 26.) Kische argues that Mr. Simsek breached his duty of "the highest good faith" under the Operating Agreement by forming JD Stellar, assigning the Marseille mark to JD Stellar, and transferring the warehouse lease from Kische to JD Stellar. (*Id.* at 24-25.) Kische also contends that Mr. Simsek breached a fiduciary duty of loyalty arising in law from his position as its Chief Executive Manager. (*Id.* at 26.) Mr. Simsek argues that summary judgment on the breach element of this claim is inappropriate because genuine issues of material fact remain as to whether JD Stellar directly competed with Kische and Mr. Simsek did not deprive Kische of any business opportunities. (*Id.* at 22-26.)

As an initial matter, the court highlights that both parties treat the fiduciary duty arising under the contract and under the law as one of loyalty. (*See* Mot. at 25-26; Resp. at 23-26.) The duty of loyalty prohibits an employee from "soliciting customers for a rival business" or acting "in direct competition with his or her employer's business." *Evergreen Moneysource Mortg. Co. v. Shannon*, 274 P.3d 375, 380 (Wash. Ct. App. Feb.

16, 2012).  The duty also precludes an employee from using the employer's property for his own purposes.  *See Wells Fargo Ins. Servs. USA, Inc. v. Tyndell*, No. C16-0089SMJ, 2016 WL 7191692, at *3 (E.D. Wash. Dec. 12, 2016); *cf. In re Estate of Haviland*, 255 P.3d 854, 864 (Wash. Ct. App. 2011) ("The fiduciary duty of loyalty prohibits the use of the principal's property for the benefit of the trustee.").  The duty further requires an employee to refrain from competing with his employer "concerning the subject matter of his agency."  *Kieburtz & Assocs., Inc. v. Rehn*, 842 P.2d 985, 988 (Wash. Ct. App. 1992).

The evidence before the court demonstrates that on March 13, 2014, Mr. Simsek executed a trademark assignment by which the Marseille mark was transferred to JD Stellar.  (SAC ¶ 4.35, Ex. 18 at 55.)  And several months earlier, on August 9, 2013, Mr. Simsek transferred Kische's warehouse lease to JD Stellar.  (Lease at 31-32 (stating that "[t]he Tenant under the Lease is hereby amended to be JD Stellar LLC, a Washington limited liability company of which Ali Simsek is the majority owner and General Manager") (emphasis omitted).)  At the time of both actions, Mr. Simsek was acting on JD Stellar's behalf.  (Cert. at 59; *see also* Lease at 31.)  Because Mr. Simsek did not resign from Kische until March 17, 2014, at the earliest, *see supra* § III.C.2.d (noting a genuine dispute of material fact as to whether Mr. Simsek resigned on March 17, 2014, or sometime thereafter), he was still bound to refrain from using Kische's property for his own benefit at the time of the transfer and assignment, *see Tyndell*, 2016 WL 7191692, at

//

//

//

*3.  Mr. Simsek offers no evidence to refute these facts and thus does not create a genuine dispute of material fact sufficient to withstand summary judgment.[14]

Rather, Mr. Simsek argues that he did not violate his duty of loyalty because he did not deprive Kische of any corporate opportunity.  (*See* Resp. at 24.)   "The corporate opportunity doctrine prohibits directors or officers from appropriating to themselves opportunities that rightfully belong to the corporation."[15]  *Noble v. Lubrin*, 60 P.3d 1224, 1228 (Wash. Ct. App. 2003).  The doctrine requires that (1) the opportunity at issue be within the corporation's line of business or the business has "an actual or expectant interest in the opportunity," and (2) the corporation has "the financial ability to seize the opportunity."  *Id.* at 1229.  "Whether a particular business opportunity belongs to the corporation or is personal to an individual depends upon the facts and circumstances of each particular case."  *Wagner v. Foote*, 908 P.2d 884, 886 (Wash. 1996).  The corporate opportunity argument, however, does not directly respond to Kische's contention about its property—the Marseille mark and warehouse lease.  The duty of loyalty that requires a

---

[14] The court notes that its conclusion here does not conflict with its conclusion that Kische fails to demonstrate a lack of genuine dispute regarding whether Mr. Uysal gave Mr. Simsek permission to transfer the Marseille mark as the Operating Agreement required for transactions involving more than $10,000.00 or matters outside Kische's ordinary business.  Although it is possible that a person may be absolved of fulfilling his duty of loyalty if he receives permission to take an action that would otherwise breach that duty, *cf. J&J Celcom v. AT&T Wireless Servs., Inc.*, 169 P.3d 823, 828 (Wash. 2007) (stating that under Washington law, partners may agree to "authorize transactions that would otherwise violate the duty of loyalty"), neither party raises the issue, and the court has not identified any case law suggesting that the court must analyze this question before finding a breach of the duty of loyalty.  Thus, although the Operating Agreement speaks specifically of permission for certain purposes, the law regarding the duty of loyalty does not.

[15] Courts generally apply the corporate opportunity doctrine to LLCs.  *See, e.g.*, *Patmon v. Hobbs*, 495 S.W.3d 722, 726 (Ky. Ct. App. 2016).

fiduciary to refrain from appropriating company assets and the duty to refrain from usurping corporate opportunities are distinguishable, and neither party provides any authority to the contrary.  Accordingly, the corporate opportunity doctrine does not alter the court's conclusion.[16]

As to JD Stellar's formation, the court has already concluded that there is no genuine dispute of material fact that Mr. Simsek formed the company while still working for Kische.  *See supra* § III.C.2.a.  However, because the fiduciary duty of loyalty at issue here prevents an agent from competing with its principal, the key question is whether Mr. Simsek impermissibly competed with Kische while acting as its fiduciary.  *See Shannon*, 274 P.3d at 380.  Mr. Simsek argues that Kische fails to "offer[] any examples of instances in which Kische was capable in any way of completing delivery of clothing during the existence of JD Stellar."  (Resp. at 23.)  In his declaration, he states that in March 2014, "it was clear that [Kische] could not complete any substantial orders, because Mr. Uysal could not produce or ship clothing with any sort of reliability." (Simsek Decl. ¶ 40.)  But Mr. Simsek construes his duty of loyalty too narrowly.  His duty of loyalty was broader than simply to refrain from directly competing with Kische; it also prohibited him from competing with Kische regarding the subject matter of his

---

[16] Mr. Simsek also argues that Kische should have been dissolved pursuant to the Operating Agreement because of "Mr. Uysal's actions in rend[er]ing the company unable to do business, including his unmanageable debt situation in Turkey, his inability to reliably produce and ship large orders, Kische not generating enough income to pay its debts and employees, and consequently placing an employee, Mr. Simsek, in extreme financial jeopardy as a result of his status as the personal guarantor."  (Resp. at 25 (citing OA at 10).)  There is insufficient information before the court for it to determine that Kische should have been dissolved and that if so, such dissolution would have absolved Mr. Simsek of his duty of loyalty.

agency—selling women's clothing.  *See Shannon*, 274 P.3d at 380; *Rehn*, 842 P.2d at 988.

Nevertheless, Kische fails to meet its initial burden of showing a lack of genuine dispute of material fact regarding whether JD Stellar competed with Kische.  Kische relies on Mr. Simsek's admission in his answer that he sold clothing through JD Stellar to certain entities that previously bought clothing from Kische.  (Mot. at 10 (citing 2d Answer ¶ 64).)  However, that admission does not establish that Mr. Simsek made these sales while he acted as Kische's Chief Executive Manager.  (2d Answer ¶ 64 (denying the allegation that Mr. Simsek completed these orders while he served as Kische's manager); *see also* SAC ¶ 4.54.)  Similarly, Kische overstates Mr. Simsek's deposition testimony, stating that he admitted to forming JD Stellar to sell women's fashion to Kische's clientele.  (*See* Mot. at 10.)  At most, Mr. Simsek admits in his deposition testimony that he formed JD Stellar while still working for Kische.  (*See* Simsek Dep. at 31-32.)[17]  The evidence before the court therefore fails to demonstrate that Mr. Simsek impermissibly competed with Kische by selling women's clothing through JD Stellar at the time he still worked for Kische.  Accordingly, the court denies summary judgment on this theory of breach of fiduciary duty.

*//*

---

[17] In addition, Kische cites to portions of deposition testimony that are not in the exhibit provided to the court.  (*See* Mot. at 10 (citing Simsek Dep. at 43:18-20, 148, although those pages are not included in the exhibit).)  Moreover, to the extent Kische intends to rely on the email exchanges with former Kische customers that refer to subsequent transactions with JD Stellar, those exhibits are unauthenticated.  (*See* Herschlip Decl. at 2-3, Exs. H, I); *supra* § III.A.2.

Finally, Kische argues that Mr. Simsek breached his duty of loyalty by soliciting Kische's customers. (Mot. at 26.) However, the only evidence Kische cites in support of this argument is one of the unauthenticated exhibits discussed above, *see supra* n.12, in which Ms. Walker told buyers that she and Mr. Simsek "are transitioning from Kische to JD Stellar" and that they "moved the product line to be totally under our control by owning the company" (SAC ¶ 4.40, Ex. 37 at 45). Because Kische offers no authenticated evidence in support of this argument, the court concludes Kische is not entitled to summary judgment on this theory.

## C. Causation and Damages

Mr. Simsek also argues that summary judgment on the breach and duty elements of these claims is inappropriate because Kische seeks "a piecemeal summary judgment ruling . . . without offering any evidence or support for the existence of what is ultimately the lynchpin issue: proximately caused damages." (Resp. at 27.) This argument fails, however, because a party may seek partial summary judgment on part of a claim. *Findlay*, 2011 WL 2710499, at *2. Although Kische must prove causation and damages to ultimately prevail on these claims, *Nw. Indep. Forest Mfrs.*, 899 P.2d at 9; *Micro Enhancement*, 40 P.3d at 1217, that fact does not preclude the court from ruling on the duty and breach elements.

## D. Affirmative Defenses

Finally, Kische moves for summary judgment on Mr. Simsek's affirmative defenses to the breach of contract and fiduciary duty claims. (*See* Mot. at 4, 13.) In defense of contract formation or liability for breach of contract, Mr. Simsek asserts that

Kische's claims "are barred in whole or in part by the equitable doctrines of laches, waiver, unclean hands, and/or estoppel" (2d Answer ¶ 121), the contract is void because Kische "induced" Mr. Simsek to enter into the contract on the basis of "material misrepresentations and omissions" (*id.* ¶ 122), Mr. Simsek had no duty to perform under the contract because of "the failure of a condition precedent" (*id.* ¶ 123), Mr. Simsek is excused from performing under the contract due to a mistake or Kische's breach (*id.* ¶ 124), Kische ratified Mr. Simsek's actions that allegedly constitute a breach (*id.* ¶ 125), Kische failed to provide consideration (*id.* ¶ 128), and Mr. Simsek is excused from performance due to Kische's breach (*id.* ¶ 131). Kische argues that Mr. Simsek "may conjure up some allegation to support an affirmative defense to the contract . . . his pleadings, admissions[,] and sworn testimony yield no such fact," (Mot. at 13), but does not identify any specific affirmative defenses on which it moves for summary judgment (*see generally id.*). Therefore, Kische fails to meet its burden of demonstrating the absence of a genuine dispute of material fact and that judgment as a matter of law is appropriate. Accordingly, the court denies Kische's motion for summary judgment on Mr. Simsek's affirmative defenses.

In summary, the court grants Kische summary judgment on the duty element of its breach of contract and fiduciary duty claims, on the breach element of the contract claim as to the exclusivity provision of the Operating Agreement, and on the breach element of the fiduciary duty claim as to Mr. Simsek's transfer of the Marseille mark and warehouse lease while he was Kische's Chief Executive Manager. The court denies Kische's motion as to the other theories of breach of contract and fiduciary duty discussed above.

# IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part

Kische's motion for partial summary judgment (Dkt. # 82).

Dated this 6th day of September, 2017.

JAMES L. ROBART
United States District Judge