UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KISCHE USA LLC, | CASE NO. C16-0168JLR |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ALI SIMSEK, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court is Plaintiff Kische USA LLC's ("Kische") second motion for summary judgment.[1]  (2d MSJ (Dkt. # 101).)  Defendants oppose the motion.  (2d MSJ

---

[1] Defendants Ali Simsek, Diane Walker, and JD Stellar LLC ("JD Stellar") (collectively, "Defendants") have also filed a motion for summary judgment.  (Defs. MSJ (Dkt. # 121).)  That motion is not yet ripe for the court's consideration (*see id.* at 1 (stating a noting date of December 8, 2017)), and thus the court makes no ruling on that motion at this time.  However, where Defendants argue in response to Kische's motion that the court should enter summary judgment in their favor, the court addresses the argument.  *See infra.*

Resp. (Dkt. # 107).)  The court has considered the motion, the parties' submissions in favor of and in opposition to the motion, the relevant portions of the record, and the applicable law.  Being fully advised,[2] the court DENIES Kische's motion for the reasons set forth below.

## II.   BACKGROUND

The court has extensively detailed the factual and procedural background of this case in numerous prior orders.  (*See, e.g.*, 6/29/16 Order (Dkt. # 39); 12/13/16 Order (Dkt. # 65); 2/22/17 Order (Dkt. # 74); 9/6/17 Order (Dkt. # 95); 11/2/17 Order (Dkt. # 115).)  Thus, in this order, the court recounts only the facts salient to Kische's instant motion.

Mehmet Uysal, who resides in Turkey, formed Kische in 2007.  (Uysal Decl. (Dkt. # 103) at 2.)[3]  Beginning at that time, Kische "designed, imported[,] and sold clothing to prominent retailers in the United States, including Nordstrom, Haute Look, Winners, T.J. Maxx, Marshalls[, and] Ross."  (*Id.*)  Kische contends that Mr. Simsek and Ms. Walker abused their positions as Kische managers to misappropriate Kische's assets and form JD Stellar, a competing business.  (*See id.* (stating that Mr. Simsek and Mr. Walker "worked as managers of Kische"); SAC (Dkt. # 75) ¶¶ 4.19, 4.23-4.26; 9/6/17 Order (concluding that Mr. Simsek breached duties that he owed to Kische as its manager).)  Of particular

---

[2] Kische requests oral argument (*see* 2d MSJ at 1), but the court determines that oral argument would not be helpful to the court's disposition of the motion, Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court denies Kische's request.

[3] Kische mislabels Mr. Uysal's declaration on the docket as "Declaration of Plaintiff." (*See* Uysal Decl.)  Mr. Uysal is not, however, a party to this case.  (*See generally* Dkt.)

relevance here, Kische contends that Defendants invalidly transferred and used two trademarks of which Kische is "the senior user and owner":  (1) Kische word mark # 682 ("the Kische Mark"), and (2) Marseille design mark # 455 ("the Marseille Mark") (collectively, "the Marks").[4]  (2d MSJ at 6 (citing SAC ¶¶ 4.9, Ex. 6 (Dkt. # 75-1) at 35-36 ("Kische Reg."), 4.10, Ex. 7 (Dkt. # 75-1) at 37-38 ("Marseille Reg.")).)  On this basis, Kische claims that Defendants infringed the marks in violation of the Lanham Act, 15 U.S.C. § 1114, and common law.  (SAC ¶¶ 5.1-6.7.)

Kische registered the Marseille Mark on May 17, 2011, and the Kische Mark on August 5, 2014, with the United States Patent and Trademark Office ("USPTO").  (*See* Kische Reg.; Marseille Reg.)  The registrations state that Kische first used the Kische Mark in 2007 and the Marseille Mark in 2010.  (*See* Kische Reg.; Marseille Reg.) According to Mr. Uysal, Kische "used its trademarks in commerce in Washington State, as well as regionally across the United States through its shipments and distributions to major retailers."  (Uysal Decl. at 2; *see also* Simsek Decl. (Dkt. # 108) ¶ 8 (agreeing that Kische sold clothing under the Marks).)  Kische's sale of clothing with the Marks "grossed annual sales of $13 million" in 2011.  (Uysal Decl. at 1.)  Kische promoted the clothing bearing the Marks "through the internet, email and print advertising, word of

---

[4] Kische's briefing also implicates two other marks—a Kische design mark and a Marseille word mark.  (*See* 2d MSJ at 8 (discussing both the Marseille design mark and the Marseille word mark); *see also* SAC ¶ 4.8, Ex. 5 (Dkt. # 75-1) at 33-34 (registering a Kische design mark on December 23, 2008, but showing that Kische later canceled the registration on July 24, 2015); *id.* ¶ 4.30, Ex. 25 (Dkt. # 75-2) (showing that after the Marseille Mark was assigned to JD Stellar, JD Stellar also registered a Marseille word mark).)  However, Kische does not allege infringement of those marks or move for summary judgment on any infringement of those marks other than for transfer of the Marseille word mark.  (*See* SAC ¶¶ 5.1-6.7; 2d MSJ at 28.)

mouth, showrooms, tradeshows, retail agents, and at clothing showcase events." (*Id.* at 2.)

On March 13, 2014, Mr. Simsek—while he was still Kische's manager—facilitated the assignment of the Marseille Mark to JD Stellar.[5] (*See* SAC ¶ 4.23, Ex. 18 (Dkt. # 75-1) ("Assignment") at 55.) After the assignment, JD Stellar filed for federal trademark protection of a Marseille word mark. (*See* SAC ¶ 4.30, Ex. 25 at 6.) The registration stated that the mark had first been used on June 20, 2010. (*Id.*) The word mark was registered to JD Stellar on July 7, 2015. (*Id.*; Simsek Decl. ¶ 22, Ex. F.) Citing two purchase orders from JD Stellar to TJ Maxx in 2014, Kische contends that after the transfer and redesign of the Marseille Mark, JD Stellar used the mark in connection with selling its goods. (2d MSJ at 9 (citing Herschlip Decl. (Dkt. # 102) at 2, Exs. F, G).) Kische also contends that JD Stellar used the Kische Mark to "sell clothing goods[] and solicit sales" by using the mark in emails to customers. (*Id.* at 12 (citing Mitchell Decl. (Dkt. # 104) at 2, Exs. D-F).)

Defendants' version of events does not differ significantly from Kische's.[6] However, Defendants maintain that "Kische has not delivered a single clothing order since 2014" (2d MSJ Resp. at 6 (citing Simsek Decl. ¶ 13, Ex. B); *but see id.* at 8 (stating

---

[5] In its September 6, 2017, order on Kische's first motion for summary judgment, the court found that Mr. Simsek breached his common law fiduciary duty by using Kische's property for his own benefit at the time he assigned the Marseille Mark from Kische to JD Stellar. (9/6/17 Order at 31.)

[6] The court does not recount Defendants' explication of Mr. Uysal's financial difficulties in Turkey because those facts are irrelevant to the trademark infringement claims before the court. (*See* 2d MSJ Resp. at 7; Foreman Decl. (Dkt. # 109) ¶¶ 3-10; Simsek Decl. ¶¶ 7, 10-15.)

that "[t]he last shipment of Kische's Marseille mark clothing was February 26, 2014, and the last shipment of Kische's Kische mark clothing . . . was May 28, 2016")) and that JD Stellar never sold or advertised any clothing bearing the Kische Mark (Simsek Decl. ¶ 17). Defendants further aver that the Kische Mark was the more popular of the Marks and accounted for at least 90 percent of Kische's sales prior to 2014. (*Id.* ¶ 8.) Defendants contend that Kische sold only small quantities of the Marseille Mark "primarily to select Canadian customers." (*Id.* ¶ 9.) Mr. Simsek attests that Mr. Uysal's goal was to turn the Kische Mark "into an internationally known brand" and that Mr. Uysal disfavored the Marseille Mark as a result. (*Id.* ¶ 8.) Mr. Simsek further states that the Marseille Mark has also made up only a small percentage of JD Stellar's sales, while the "vast majority" of JD Stellar's sales have come from its Dantelle mark. (*Id.* ¶ 20, Ex. D.) Defendants maintain that JD Stellar stopped selling any clothing under the Marseille Mark after they received a cease-and-desist letter from Kische's counsel on September 11, 2015. (*Id.* ¶ 26.)

Kische now seeks summary judgment on its claims that Defendants infringed the Marks. (*See* 2d MSJ at 15-28; SAC ¶¶ 5.1-5.7 (alleging trademark infringement in violation of 15 U.S.C. § 1114), 6.1-6.7 (alleging common law trademark infringement).)

### III.   ANALYSIS

**A.   Legal Standard**

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

*Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.* at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a

motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

**B.      Second Motion for Summary Judgment**

As a threshold issue, Defendants take issue with the fact that this motion is Kische's second motion for summary judgment.  (2d MSJ Resp. at 5.)  District courts have discretion to entertain second motions for summary judgment.  *Hoffman v. Tonnemacher*, 593 F.3d 908, 909 (9th Cir. 2010).  The Ninth Circuit has stated that "allowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits."  *Id.* at 911 (quoting Fed. R. Civ. P. 1); *see also id.* at 912 ("Allowing a successive summary judgment motion potentially can save all concerned the far greater expenses of a trial.").  However, the Ninth Circuit also cautioned that district courts should "weed out frivolous or simply repetitive motions."  *Id.*  In exercising its discretion on this question, a district court may consider the following factors:  "'(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) [the] need to correct a clear error or prevent manifest injustice.'"  *Brazill v. Cal. Northstate Coll. of Pharm., LLC*, No. CIV.

//

2:12-1218 WBS GGH, 2013 WL 4500667, at *1 (E.D. Cal. Aug. 22, 2013) (quoting *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995)).

Although Defendants contest Kische's filing of a second motion for summary judgment, the court will consider the motion in the interest of judicial efficiency. (2d MSJ Resp. at 5.) Even though many of the underlying facts and issues are the same as in Kische's first motion, the second motion is not patently frivolous or simply repetitive. *See Hoffman*, 593 F.3d at 911. Moreover, the first motion for summary judgment involved the breach and duty elements of Kische's breach of contract and fiduciary duty claims against Mr. Simsek, whereas this motion involves Kische's trademark infringement claims. (*Compare* 1st MSJ (Dkt. # 85), *with* 2d MSJ.)

However, if left unchecked, repetitive motions practice can create significant costs and expend considerable court resources. Thus, the court orders any party wishing to file an additional dispositive motion to first seek the court's leave. *See* Fed. R. Civ. P. 56(b) (stating that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery"); (*see also* Sched. Order (Dkt. # 78) at 1 (setting the dispositive motions deadline as January 9, 2018).) A party's failure to seek the court's leave will result in the court striking the dispositive motion as improperly filed.

**C.    Kische's Motion**

As presented in its motion, Kische seeks summary judgment on four issues: (1) that Kische had valid common law and federal trademark rights in the Marks; (2) that Mr. Simsek's transfer of the Marseille Mark was invalid and should be reversed; (3) that

Defendants infringed on the Marks by causing a likelihood of consumer confusion; and

(4) that Defendants knowingly and willfully infringed on the Marks.[7]  (2d MSJ at 6.)  As

a preliminary matter, Defendants argue Kische's motion is so confused and unclear that

they cannot properly respond to it.  (*See* 2d MSJ Resp. at 5.)  But Defendants exaggerate

the severity of any ineloquence in Kische's motion.  Although Kische does not expressly

state that it seeks summary judgment on its trademark infringement claims—instead

stating that it requests judgment in its favor on the issues of whether it had rights in the

Marks and whether Defendants infringed on the Marks by causing a likelihood of

consumer confusion—Kische's motion adequately informs Defendants and the court of

Kische's arguments.  (*See* 2d MSJ at 14 (using the subheading "JD Stellar Has

Committed Federal Trademark Infringement In Violation of 15 U.S.C. § 1114"); *see also*

2d MSJ Resp. at 13-25 (contesting the entry of summary judgment on the trademark

infringement claims).)  Indeed, those two "issues" comprise the two elements of a

trademark infringement claim under both Section 32 of the Lanham Act and common

law.[8]  *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)

(stating that a plaintiff asserting a trademark infringement claim must prove that (1) it has

---

[7] However, Kische elsewhere in its motion states that three issues are suitable for summary judgment:  (1) whether the transfer of the Marseille Mark to JD Stellar was proper; (2) whether JD Stellar's use of the Marks "in connection with the sale of identical clothing goods create[d] a likelihood of confusion"; and (3) whether the Marseille Mark should be transferred to Kische.  (*Id.* at 13; *see also id.* at 14.)  In the interest of comprehensively addressing the motion, the court takes up the four issues identified above.

[8] Although Kische does not expressly say so in either its second amended complaint or second motion for summary judgment, Kische appears only to assert a theory of direct trademark infringement.  (*See, e.g.*, SAC; 2d MSJ.)  Thus, the court does not address any other theory of liability.

valid, protectable trademarks, and (2) the defendant's use of the marks in commerce is likely to cause confusion); *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1031 (C.D. Cal. 2011) (analyzing common law and Lanham Act trademark infringement claims together because "courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition"). The court thus proceeds to analyze whether Kische is entitled to summary judgment on its trademark infringement claims.

### 1. Laches

Before turning to the merits of the claims, the court addresses Defendants' argument that the doctrine of laches applies because Kische has not sold any clothing or used either of the Marks since 2014.[9] (2d MSJ Resp. at 16-17.) Kische argues that the doctrine is inappropriate on the facts of this case. (Reply (Dkt. # 110) at 7-8.)

A laches defense "can defeat an otherwise valid claim under the Lanham Act." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (internal quotation marks omitted). "The limitations period for laches starts from the time the plaintiff knew or should have known about its potential cause of action." *Id.* (internal quotation marks omitted). This standard can be satisfied by either actual or constructive knowledge because "[c]ompanies expecting judicial

---

[9] The court notes that Defendants appear to conflate their laches argument with their abandonment argument. (*See id.* (stating that Kische "should be barred under laches from making an infringement claim[] because, since 2014, it has abandoned the production of clothing and abandoned the use of any marks, including [the] Marseille [mark]").) Because the doctrine of laches and the abandonment defense are distinct legal doctrines, the court addresses them separately. *See infra* § III.C.1.i.

enforcement of their marks must conduct an effective policing effort." *Grupo Gigante Sa De CV v. Dallo & Co. Inc.*, 391 F.3d 1088, 1102 (9th Cir. 2004) (emphasis omitted). Laches requires a defendant to show that the plaintiff's delay in filing suit was unreasonable and that the defendant suffers prejudice from the delay. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). In a trademark infringement action, the court engages in two steps to determine whether a delay was unreasonable. *See id.* First, the court determines when the statute of limitations period expired for "the most closely analogous action under state law." *Jarrow Formulas,* 304 F.3d at 836. "If the plaintiff filed within that statutory period, there is a strong presumption against laches." *Tillamook*, 465 F.3d at 1108. The district court then balances six factors to determine whether the trademark owner's delay in filing suit was unreasonable: "(1) strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing [the] mark; (3) harm to [the] senior user if relief is denied; (4) good faith ignorance by [the] junior user; (5) competition between [the] senior and junior users; and (6) extent of harm suffered by the junior user because of [the] senior user's delay." *Id.*

Defendants make no argument regarding an analogous statute of limitations or the six factors bearing on unreasonableness. (*See* 2d MSJ Resp.) In addition, Defendants make no showing of prejudice from any delay in Kische asserting its trademark infringement claims. (*See id.*) These omissions are fatal to Defendants' contention that laches should bar Kische's trademark claims, and the court declines to apply the laches

*//*

doctrine here.  Accordingly, the court proceeds to analyze the trademark infringement

claims.

### 2. Trademark Infringement Claims

To prove a claim for trademark infringement, Kische must show that (1) it has

valid, protectable trademarks,[10] and (2) Defendants' use of the Marks in commerce is

likely to cause consumer confusion.  *Applied Info. Scis.*, 511 F.3d at 969 (citing 15

U.S.C. ¶ 1114(1)(a)).  Courts often characterize those two elements as comprising three

distinct requirements: (1) a valid, protectable trademark (2) used in commerce (3) in such

a way that is likely to cause consumer confusion.  *See Karl Storz Endoscopy Am., Inc. v.*

*Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002) ("We must address whether [the

defendant] used [the plaintiff's] trademark in commerce."); *UL LLC v. Space Chariot*

*Inc.*, 250 F. Supp. 3d 596, 608 (C.D. Cal. 2017) (addressing whether the defendant used a

mark "identical with, or substantially indistinguishable from" the mark at issue "in

connection with the sale, offering for sale, distribution, or advertising of goods or

services" before addressing the likelihood of consumer confusion).  The key inquiry in a

claim for trademark infringement is whether the infringing use of a valid trademark

"creates a likelihood that the consuming public will be confused as to who makes what

product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008).  "Because of

---

[10] The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof" that is "used by a person" or that "a person has a bona fide intention to use in commerce and applies to register on the principal register . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.

the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

      *a. Valid Ownership*

The court first considers whether Kische owns the marks. Kische contends that it "has established prima facie evidence of its trademarks' validity by virtue of their registration, and established common law rights to [the] marks by virtue of their prior use." (2d MSJ at 16.) "Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Applied Info. Scis.*, 511 F.3d at 970 (internal quotation marks omitted and alteration in original). The defendant can rebut the presumption by demonstrating that the registrant had not established valid ownership rights in the mark at the time of registration. *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219-20 (9th Cir. 1996).

      i. The Kische Mark

Kische has established prima facie ownership of the Kische Mark because Kische registered the mark on August 5, 2014. (*See* Kische Reg.); *Applied Info. Scis.*, 511 F.3d at 970. Defendants do not attempt to rebut this showing by arguing that Kische did not have valid ownership rights at the time of registration. (*See generally* 2d MSJ Resp.); *see Sengoku Works*, 96 F.3d at 1219-20. Rather, Defendants challenge Kische's ownership by arguing that Kische abandoned it. (2d MSJ Resp. at 16.) They contend that Kische

has not sold any clothing under the mark since 2014, "has not offered any evidence of a plan or even the possibility of starting to sell clothing again," and is "now a presumably insolvent company with no means of production." (*Id.* at 17.)

"Abandonment is a defense to a claim of infringement of a registered trademark." *Grocery Outlet Inc. v Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007). Abandonment requires "both discontinuance of all bona fide trademark use in the ordinary course of trade and an intent not to resume such use."[11] *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 933 (9th Cir. 2006) (citing 15 U.S.C. § 1127). Abandonment requires that an entity completely cease or discontinue its trademark use, and unless use "is actually terminated, the intent not to resume use prong of abandonment does not come into play." *Id.* at 937-38. The party claiming abandonment bears the burden of proving both elements, *see Grocery Outlet*, 497 F.3d at 951, and the proof required is "strict," *see Wallack v. Idexx Labs., Inc.*, No. 11cv2996-GPC (KSC), 2015 WL 5943844, at *5 (S.D. Cal. Oct. 13, 2015) ("The Ninth Circuit has not decided whether 'strictly proved' means to prove by clear and convincing evidence, but the burden of proof is high."). Nonuse for three consecutive years constitutes prima facie evidence of abandonment, although it does not shift the burden of proof to the trademark owner. *See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247-48 (9th Cir. 2013); *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 411 (9th Cir. 1996).

---

[11] A trademark may also be abandoned when it becomes generic. *See Grocery Outlet*, 497 F.3d at 951.

Defendants have not "strictly proved" abandonment of the Kische Mark. *See Wallack*, 2015 WL 5943844, at *5. Mr. Simsek attests that Kische has not sold any clothing under either of the Marks for the last three years—since May 28, 2014 (Simsek Decl. ¶ 13, Ex. B), which constitutes prima facie evidence of abandonment, *Herb Reed*, 736 F.3d at 1247-48. However, Defendants fail to meet their burden of proving intent not to resume use of the Marks. *Wallack*, 2015 WL 5943844, at *5. They rely only on conclusory assertions to make this showing. (*See* 2d MSJ Resp. at 17.) For example, Defendants state that Kische "has not offered any evidence of a plan or even the possibility of starting to sell clothing again." (*Id.*) But this assertion falls far short of the strict proof Defendants must put forth to demonstrate abandonment. In addition, even if Defendants' assumption that Kische is no longer a solvent business is correct (*id.* (stating that Kische is "now a presumably insolvent company")), "a failing, yet ongoing, business [does not] automatically abandon[] its mark," *Electro Source*, 458 F.3d at 933. For these reasons, the court finds that Defendants have not met their burden of proving abandonment and denies Defendants' request to grant judgment in their favor on the trademark infringement claims on this basis. (*See* 2d MSJ Resp. at 17 ("[U]nder Rules 56(e)(4) and 56(f), the [c]ourt is asked to enter a ruling that [Kische's] infringement claims must fail . . . .").)

   ii. The Marseille Mark

As to the Marseille Mark, the undisputed evidence before the court shows that JD Stellar is currently the registered owner of the Marseille Mark. (*See* Assignment.) Thus, the court presumes that JD Stellar owns the trademark. *Sengoku Works*, 96 F.3d at 1219

("When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark."). However, Kische can rebut this presumption by "showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated."[12] *Id.*; *see also Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006) (stating that the plaintiff "may rebut the presumption of ownership [in favor of the defendant] with evidence establishing its own prior use in commerce of the registered mark"). Kische must prove "(1) that it actually adopted and used the mark[] in commerce prior to [JD Stellar's] registration in such a manner that sufficiently associated the mark[] with" Kische's sale of clothing, and "(2) that its use of the mark[] was continuous and not interrupted." *Id.* at 1126. Prior use in commerce includes an element of actual use and an element of display. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001) (citing 15 U.S.C. § 1127). In evaluating these elements, the court uses a totality of the circumstances approach to determine whether the mark was used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012) (internal quotation marks omitted); *see also Airs Aromatics, LLC v. Opinion*

---

[12] In this regard, Defendants are incorrect that because JD Stellar is the registered owner of Marseille mark, Kische's claim fails as a matter of law. (*See* 2d MSJ Resp. at 15 ("Because JD Stellar's use of the Marseille mark occurred during the period of time it was the registered owner and not [Kische], there cannot be infringement.").) The court therefore denies Defendants' request to "enter a ruling that [Kische's] infringement claims must fail due to" JD Stellar's registration of the Marseille mark. (*Id.* (citing Fed. R. Civ. P. 56(e)(4), (f)).)

*Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999)) ("Continuous usage requires sufficiently public usage as 'to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'"). Under this approach, the court considers actual sales, the genuineness and commercial character of the activity, the amount of business transacted, the degree of ongoing activity to the holder to conduct the business using the mark, and whether the mark was sufficiently public, among other factors. *Rearden*, 683 F.3d at 1205.

Although Kische does not dispute that JD Stellar is the registered owner of the Marseille Mark, Kische argues that it acquired ownership of the Marseille Mark before JD Stellar by using it in commerce before JD Stellar's registration. (2d MSJ at 17.) The court concludes that Kische fails to meet its burden of production regarding Kische's prior use. *See id.* at 1208.

To prove prior use, Kische proffers Mr. Simsek's deposition testimony, a cease-and-desist letter from Kische's counsel, Defendants' answers to Kische's requests for admission, and pictures of clothing bearing a Marseille label. (*See* 2d MSJ at 17.) However, when viewing this evidence in the light most favorable to Defendants, Kische falls short of demonstrating prior use as a matter of law. First, the deposition testimony, cease-and-desist letter, and responses to the requests for admission demonstrate at best establish a dispute of material fact as to whether Kische first used the Marseille Mark in commerce. For example, Mr. Simsek testified that he believed Kische began using the Marseille mark in 2011 but was "not sure" and that Kische stopped using the mark in

2012.  (Herschlip Decl. at 1, Ex. A ("Simsek Dep.") at 44.)  In addition, Kische's

counsel's cease-and-desist letter states only that "on information and belief," Kische had

used the Marseille mark in commerce since August 2010, and thus is insufficient to

demonstrate prior use.  (*Id.* at 2, Ex. D at 42.)  Further, Defendants' answers to Kische's

requests for admission state only that Kische "briefly" used the Marseille Mark, Mr.

Uysal directed Mr. Simsek to stop using the Marseille Mark, and the mark was first used

in August 2010.  (*Id.* at 2, Ex. B at RFA Nos. 47, 82, 110.)  Finally, the court cannot

discern what Kische intends the pictures to demonstrate because Kische does not provide

any context for the pictures.  (*See, e.g.*, *id.* at 2 (describing the exhibit as "[a] true and

correct copy of JD Stellar's MARSEILLE work mark specimen of use").)  In short, none

of the proffered material illustrates the exemplary factors the court evaluates under the

totality of circumstances analysis.[13]

      The other piece of evidence Kische presents in support of demonstrating its prior

use is its May 17, 2011, registration of the Marseille Mark before the mark was later

assigned to JD Stellar.  (*See* 2d MSJ at 17 (citing Marseille Reg.).)  In the registration,

Kische stated that it first used the mark on June 20, 2010, and first used the mark in

commerce on August 10, 2010.  (Marseille Reg.)  Although the statements in the

---

[13] To the extent that other material in the voluminous docket supports Kische's assertion of prior use, Kische bears responsibility for bringing that material to the court's attention.  *See Celotex*, 477 U.S. at 323 (stating that the party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles . . . .").  Accordingly, the court does not trawl the record for additional material helpful to Kische's position.

registration suggest Kische used the mark in commerce before JD Stellar, they fail to demonstrate first use as a matter of law. *See Halicki Films LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008) (stating that to acquire ownership of a trademark, "[i]t is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services"). Kische puts forth no evidence to support any other factors under the totality of circumstances test, such as actual sales, the genuineness and commercial character of the activity, the amount of business transacted, the degree of ongoing activity to the holder to conduct the business using the mark, or whether the mark was sufficiently public.[14] *See Rearden*, 683 F.3d at 1205; (*see also* 2d MSJ.) In short, it is simply not enough for Kische to state that it first used the Marseille Mark in commerce—it must actually demonstrate that it did so through evidence other than its prior registration. *See id.*; *Halicki Films*, 547 F.3d at 1226.

Kische also fails to show that its use of the Marseille Mark was continuous and uninterrupted. *See Bazaar Del Mundo Inc.*, 448 F.3d at 1126; (2d MSJ at 17-18 (failing to address this requirement for showing prior use).) In addition to Kische's failure to

---

[14] Although some of the statements in Defendants' motion could support the proposition that Kische first used the Marseille mark in commerce (*see, e.g.*, 2d MSJ Resp. at 6 (stating that "the Marseille mark was far less popular" than the Kische mark, and sold in small quantities primarily to select Canadian customers), 8 (stating that "[t]he last shipment of Kische's Marseille mark clothing was February 26, 2014")), those statements are insufficient because Kische has not met its burden of establishing a prima facie showing in support of its position on this issue, *Nor-Cal Plumbing*, 48 F.3d at 1471; *see also Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 (9th Cir. 2004) ("If the moving party meets its initial burden, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided by Rule 56, specific facts showing that there is a genuine [dispute] for trial." (internal quotation marks and emphasis omitted).).

meet its initial burden of production, Mr. Simsek's testimony suggests a genuine dispute

of material fact on this point because he attests that Kische discontinued using the

Marseille Mark in 2014.  (*See* Simsek Decl. ¶ 13.)  Thus, the court concludes that on this

record and viewing the evidence in the light most favorable to Defendants, Kische has

not met its burden of demonstrating its ownership of the Marseille Mark, and denies

summary judgment as to the trademark infringement claim regarding the mark.[15]

In setting forth its arguments, Kische makes much of the fact that Mr. Simsek

improperly assigned the Marseille Mark to JD Stellar.  (*See* 2d MSJ at 14.)  To the extent

Kische asserts that the mark was fraudulently transferred (*id.* at 17 ("Kische also filed for

federal trademark registration of its MARSEILLE design mark prior to its invalid

assignment.")), a claim for trademark infringement is not the proper vehicle for testing

that theory, *see Dahon N. Am., Inc. v. Hon*, No. 2:11-cv-05835-ODW (JCGx), 2012 WL

1413681, at *10-11 (C.D. Cal. Apr. 24, 2012) (discussing a claim for fraudulent

trademark registration and citing 15 U.S.C. § 1120).  In any event, Kische does not allege

such a claim or properly raise the argument on summary judgment.  Kische also provides

no argument or authority for connecting its assertion that Mr. Simsek's "assignment of

the trademark was improper as a matter of law" to the motion for summary judgment on

the trademark infringement claims.  (*See* 2d MSJ at 14; *see also* Reply at 6 (citing only

deposition testimony in which Mr. Simsek agreed that he "asked . . . to . . . reverse the

---

[15] For this reason, the court does not address whether Defendants' use of the Marseille Mark in commerce caused a likelihood of consumer confusion. *See Applied Info. Scis.*, 511 F.3d at 969.

transfer and send [the Marseille Mark] back to Kische").)  Accordingly, the court

concludes that any improper assignment does not negate Kische's need to demonstrate

ownership.

   b.  *Defendants' Use of the Kische Mark*

   The court now addresses whether Defendants used the Kische Mark in commerce.

Kische contends that Defendants used "kische.com email addresses that include the

KISCHE mark to sell JD Stellar's clothing goods, and solicit JD Stellar sales" by

including the mark "in the body of emails and in the signature lines of the emails."  (2d

MSJ at 18.)  Specifically, Kische points the court to three emails that include the Kische

Mark.  (*See* Mitchell Decl. at 2, Exs. D-F.)  The first email includes correspondence from

Ms. Walker and representatives from Haute Look and Nordstrom, and some parts of the

email thread include "Kische" in the signature.  (*See* Mitchell Decl. at 2, Ex. D. at 32,

35-37.)  The second email appears to be an internal email between Kische and/or JD

Stellar employees and includes "Kische" in Ms. Walker's signature.  (*Id.*, Ex. E at 40.)

Finally, the third email is from Ms. Walker—using a kische.com email address—to

Nordstrom representatives, stating that she and Mr. Simsek "are transitioning from

Kische to JD Stellar" and that they "have a new label [they] can ship [the] cardigan

under, Dantelle."  (*Id.*, Ex. F at 43.)  Kische argues that these emails constitute a use of

the mark in commerce, which created a likelihood of confusion.  (*See* 2d MSJ at 18.)

Defendants respond that their use of the Kische Mark in the form of email addresses and

signatures cannot constitute trademark infringement.  (*See* 2d MSJ Resp. at

//

1   15 ("The question[] the [c]ourt must ask is whether JD Stellar is even using the mark for

2   possible infringement purposes . . . .").)

3        A trademark is used in commerce for goods when "it is placed in any manner on

4   the goods or their containers or the displays associated therewith or on the tags or labels

5   affixed thereto."[16]  15 U.S.C. § 1127.  Thus, courts have held that marks used in a

6   brochure describing a good, tradeshow activities related to a good, and handwritten

7   receipts for the sale of a good, for example, do not constitute use in commerce.  *See*

8   *VersaTop Support Sys., LLC v. Ga. Expo Inc.*, No. 3:15-cv-02030-JE, 2017 WL 1364617,

9   at *4-5 (D. Or. Feb. 16, 2017) (holding that the use of a mark in a brochure describing

10  pipe and drape products and in tradeshow activities were not uses in commerce because

11  15 U.S.C. § 1127 requires that a mark be placed on the good in question); *Langford v.*

12  *Rice*, No. CV 10-3258-JST (PLAx), 2010 WL 11549752, at *5 (C.D. Cal. Oct. 28, 2010)

13  (finding that the use of a mark on two handwritten receipts was not a use in commerce).

14  Similarly, Defendants' use of kische.com email addresses and their inclusion of

15  signatures with the Kische Mark in the emails described above does not constitute use in

16  commerce.  *See* 15 U.S.C. § 1127.  Kische fails to point to any evidence of Defendants

17  using the Kische Mark on goods.  (*See* 2d MSJ; Reply at 7 (focusing solely on "the strong

18  weight of [Kische's] forensic expert" in authenticating the emails)); 15 U.S.C. § 1127

19  (requiring a mark to be placed on a good).  Thus, Kische fails to meets its burden of

20

21  _____

    [16] "[I]f the nature of the goods makes such placement impracticable," a trademark is used
    in commerce when it is placed "on documents associated with the goods or their sale." *Id.*
22  Because the goods at issue here are clothing (Uysal Decl. at 1), there is no indication that it is
    impracticable to place the Kische Mark on the clothing.

demonstrating that Defendants used the Kische Mark in commerce, and the court denies summary judgment on this trademark infringement claim.[17]

### 3. Willful and Knowing Infringement

Kische further seeks summary judgment in its favor that Defendants willfully and knowingly infringed the Marks, entitling Kische to attorneys' fees and treble damages.[18] (*See* 2d MSJ at 6.) Because the court denies Kische's motion for summary judgment on the trademark infringement claims, it does not address any damages arising from the alleged infringement.

### 4. Invalid Assignment and Return

Finally, Kische argues that because the Marseille Mark was improperly assigned to JD Stellar, Defendants "should be foreclosed from continuing to benefit from possessing the registrations, and the registrations of the two marks should be transferred" to Kische.[19] (2d MSJ at 28.) Defendants counter that Kische in effect seeks injunctive

---

[17] Accordingly, the court does not address the likelihood of consumer confusion from Defendants' use of the Kische Mark. *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (internal quotation marks omitted) ("The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks."). In addition, the court denies Defendants' request for summary judgment in its favor based on this factor. (*See* 2d MSJ Resp.) Defendants raise this issue in their own motion for summary judgment (*see* Defs. MSJ at 22-23), and the court will address the issue after Kische has had an opportunity to respond to that motion, *cf.* Fed. R. Civ. P. 56(f)(1) (stating that the court may grant summary judgment for a nonmovant "[a]fter giving notice and a reasonable time to respond").

[18] The court also notes that despite raising willful and knowing infringement as an issue for summary judgment, Kische provides no argument in support of its damages. (*See generally* 2d MSJ.)

[19] Thus, Kische requests that the court transfer not only the Marseille Mark, but also the Marseille word mark that JD Stellar later registered. *See supra* n.4.

relief and fails to meet the standard for demonstrating its entitlement to that form of relief. (2d MSJ Resp. at 25-26.)

Although a court may cancel a trademark under 15 U.S.C. §1064(3) if the trademark's "registration was obtained fraudulently," *Prof'l's Choice Sports Med. Prods., Inc. v. Eurow & O'Reilly Corp.*, No. 13cv1484 AJB (KSC), 2013 WL 12077438, at \*4 (S.D. Cal. Nov. 12, 2013); *see also eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1079 (C.D. Cal. 2000) ("Fraud in procurement of a trademark registration may be raised as a ground for cancellation in civil litigation . . . ."), as the court noted above, Kische does not raise any legal grounds upon which it is entitled to a transfer of the Marseille Mark, *see supra* § III.C.2.a.ii; (2d MSJ at 28.) Although the court concluded that Mr. Simsek breached his fiduciary duty to Kische by assigning the Marseille Mark to JD Stellar (*see* 9/6/17 Order at 31), that conclusion alone—without any showing that a transfer is legally permissible or justified—is insufficient to grant Kische the relief it seeks. The court therefore denies at this time Kische's motion for transfer of the Marseille mark.[20]

5. <u>Leave to Amend</u>

In its reply brief, Kische requests that the court grant Kische leave to amend pursuant to Federal Rule of Civil Procedure 15 if the court finds "any aspect" of Kische's second motion for summary judgment "inadequate." (Reply at 13 (citing Fed. R. Civ. P.

---

[20] Given the lack of clarity about the basis for Kische's request, the court denies Defendants' request for summary judgment in its favor on this issue pursuant to Rule 56(f). (*See* 2d MSJ Resp. at 26.)

15).)  Leave to amend is unnecessary, however, because the court rules only that Kische

has not demonstrated that it is entitled to summary judgment on its trademark

infringement claims.  Accordingly, the court denies the request for leave to amend.

### IV.    CONCLUSION

For the foregoing reasons, the court DENIES Kische's second motion for

summary judgment (Dkt. # 101).

Dated this 29th day of November, 2017.

_____

JAMES L. ROBART
United States District Judge