UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KISCHE USA LLC, <br><br> Plaintiff, <br> v. <br><br> ALI SIMSEK, et al., <br><br> Defendants. | CASE NO. C16-0168JLR <br><br> ORDER ON MOTION FOR SANCTIONS AND EVIDENTIARY INFERENCE |

## I. INTRODUCTION

Before the court is Plaintiff Kische USA LLC's ("Kische") motion for sanctions and evidentiary inference at trial regarding spoliation of evidence. (Mot. (Dkt. # 116).) Defendants Ali Simsek, Diane Walker, and JD Stellar, LLC ("JD Stellar") (collectively, "Defendants") filed a response to Kische's motion, (Resp. (Dkt. # 125)), Kische filed a reply (Reply (Dkt. # 132)), and Defendants filed a surreply to strike materials that Kische filed in support of its reply (Surreply (Dkt. # 144)). The court has considered the parties' submissions in support of and in opposition to the motions, the relevant portions of the

ORDER - 1

1 record, and the applicable law. Being fully advised,[1] the court GRANTS in part and
2 DENIES in part Kische's motion.

## II. BACKGROUND

The court has extensively detailed the factual and procedural background of this case in numerous prior orders. (See, e.g., 6/29/16 Order (Dkt. # 39); 12/13/16 Order (Dkt. # 65); 2/22/17 Order (Dkt. # 74); 9/6/17 Order (Dkt. # 95); 11/2/17 Order (Dkt. # 115); 11/29/17 Order (Dkt. # 130).) Thus, in this order, the court recounts only the facts salient to the instant motion.

This case involves allegations that Ali Simsek and Diane Walker abused their positions with Kische to misappropriate Kische's assets and form JD Stellar, a competing business. (See SAC (Dkt. # 75); id. ¶ 4.4, Ex. 3 ("OA") (Dkt. # 75-1) at 11.) During the relevant period, Kische—formed by Mehmet Uysal, who resided in Turkey—"engaged in the business of importing high quality and widely known wom[e]n's apparel to the United State[s] since its formation in 2007." (SAC ¶ 1.1.) Kische brings claims for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1); common law trademark infringement; common law unfair competition; breach of contract; breach of fiduciary duty; tortious interference with business relations; conversion; and unjust enrichment. (Id. ¶¶ 5.1-12.4.) On September 6, 2017, the court granted summary judgment in Kische's favor on the duty and breach elements of the

---

[1] Kische requests oral argument. (Mot. at 1.) However, the court determines that oral argument would not be helpful to its disposition of the motion. See Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

contract and fiduciary duty claims against Mr. Simsek. (*See* 9/6/17 Order.) On November 29, 2017, the court denied summary judgment in Kische's favor on its claims that Defendants infringed its trademarks. (*See* 11/29/17 Order.)

In the midst of these summary judgment motions,[2] the court received briefing and held a hearing to resolve a discovery dispute between the parties. (*See* 10/31/17 Order (Dkt. # 111); Defs. Disc. Br. (Dkt. # 112); Kische Disc. Br. (Dkt. # 113); 11/2/17 Min. Entry (Dkt. # 114).) The court ordered Defendants to produce electronic data interchange ("EDI") records, QuickBooks files,[3] passwords to those files, and sales data for JD Stellar if those documents are relevant to the remaining claims. (11/2/17 Order at 4.) In response to the court's order, Defendants produced two printed pages of Kische's QuickBooks records and 18,000 pages of JD Stellar's "entire EDI records, and JD Stellar's QuickBooks reports showing sales and profit data." (Mot. at 3; *see* Resp. at 2.) Kische also requested that the court order Defendants to produce additional documents, computers, and passwords. (*See* Kische Disc. Br at 2-5; 11/2/17 Order at 5.) After extensive questioning from the court, Defendants' counsel maintained that Defendants do not have any of the items Kische sought. (11/2/17 Order at 5.) The court, therefore, informed Kische that the court cannot order Defendants to produce materials that do not exist and that the appropriate remedy was for spoliation of evidence. (*Id.* at 5-6.) The

---

[2] On November 16, 2017, Defendants brought a motion for summary judgment requesting double unpaid wages, attorney's fees, and a dismissal of all of Kische's claims, which remains pending. (*See* Defs. MSJ (Dkt. # 121); *see generally* Dkt.)

[3] The court understands that Kische's QuickBooks records address matters such as sales, revenue, and profits, all of which are relevant to proving damages. (*See* 11/2/17 Order at 4 n.4.)

court granted the parties leave to file appropriate discovery motions while encouraging the parties to resolve their remaining discovery disputes without the court's intervention. (*Id.* at 6, n.6.) Eight days later, on November 10, 2017, Kische filed the instant motion for sanctions and for an evidentiary inference at trial regarding spoliation of evidence. (*See* Mot.)

Kische argues that Defendants refuse to produce relevant business records. (*See generally id.*) Specifically, Kische relies on the findings of its forensic expert, Gordon Mitchell,[4] to claim that: (1) Defendants did not produce one of Kische's computers, which holds some of Kische's QuickBooks files; (2) the computers Defendants have produced include QuickBooks files that were deleted; (3) Defendants did not give Kische some of the user IDs and passwords for online QuickBooks files; and (4) some of Defendants' produced materials show "last accessed" dates of as recent as June 2016, meaning that Defendants improperly altered the files before producing them.[5] (*Id.* at 4; *see* 11/10/17 Mitchell Decl. at 2, Exs. F, G.) June 2016 coincides with the time that Kische collected documents and computers from Defendants. (*See* Resp. at 3-4 ("Defendants handed over possession of these computers on June 22, 2016[,] and July 12,

---

[4] Mr. Mitchell was originally retained as a neutral expert by both parties and tasked with extracting the data off of Kische's computers. (Resp. at 4; *see* 11/10/17 Mitchell Decl. (Dkt. # 118) at 2, Ex. D at 26.) Following the data extraction, Kische retained Mr. Mitchell as its expert. (*Id.*)

[5] Kische claims, "the 'last accessed' dates, showed access by Defendants as recent as June 2016." (Mot. at 4.) It is unclear whether Kische refers to the date the produced computers were last accessed or the date the QuickBooks files on the computers were last accessed. The declaration of Mr. Mitchell does not clarify Kische's argument. (*See* Mitchell Decl., Ex. G.) The court, therefore, takes this statement to mean that some of the materials—computers or QuickBooks files—were last accessed in June 2016.

ORDER - 4

2016.").) According to Kische, Defendants have not explained how the requested information went missing, what steps Defendants took to maintain the requested information, or whether Defendants inquired to find the necessary user IDs and passwords. (Mot. at 4.) In addition, Kische argues that Defendants have not provided it with enough information to calculate JD Stellar's profits. (*Id.*)

Conversely, Defendants maintain that the only non-moot issue is Kische's QuickBooks records because Defendants already produced 18,000 pages of JD Stellar's business records in response to the court's discovery order[6] and because Defendants have disclosed all of Kische's property, user IDs, and passwords that were in Defendants' possession. (Resp. at 2-3; *see* 11/2/17 Order.) Further, Defendants argue that Mr. Uysal had access to Kische's records until mid-2013 and that Mr. Uysal could have audited his business records at any time, thus negating Defendants' obligation to produce any missing records. (Resp. at 4-6.)

Kische requests that the court enter an order: (1) striking Defendants' counterclaims and affirmative defenses that relate to the despoiled evidence[7] (*id.* at

---

[6] Kische appears to agree that Defendants have produced the requested JD Stellar information. Defendants produced these materials on November 22, 2017, after Kische filed its motion for sanctions. (*See* Resp. at 2.) Kische does not mention the JD Stellar material in its reply. (*See generally* Reply.) Thus, the court presumes that Defendants have produced the necessary material in accordance with the court's order. (*See* 11/2/17 Order.) The court therefore considers Kische's motion as it relates to the JD Stellar materials to be moot.

[7] Kische alternates between asking the court to "dismiss[] all of Defendants' defenses and counterclaims and entering default judgment against them" (Mot. at 10), and asking the court to "strike Defendant's alleged liability defenses and counterclaims related to the lost information" (*id.* at 11). Kische's proposed order limits itself to requesting that the court strike only certain defenses and counterclaims. (Proposed Order (Dkt. # 116-1) at 1-2.) The court therefore

ORDER - 5

10-11); (2) issuing a jury instruction that the despoiled evidence would have weighed against the Defendants (*id.* at 12); or (3) excluding certain evidence (*id.*). In response, Defendants request that the court exclude the testimony and opinions of Mr. Mitchell. (Resp. at 12.) Defendants have since filed a motion to exclude Mr. Mitchell's testimony, as well as the testimony of Kische's other expert, Douglas McDaniel. (*See* Mot. to Exclude (Dkt. # 148).) The court therefore withholds ruling on Defendants' motion to exclude at this time and will instead address the matter when deciding Defendants' pending motion to exclude.[8] The court notes, however, that considering Defendants' exclusion argument as presented in their response brief (*see* Resp. at 12), the court finds that Mr. Mitchell's testimony is relevant and reliable for the instant motion. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993). The court now addresses the issue of spoliation.

### III. ANALYSIS

**A. Surreply**

As an initial matter, Defendants filed a surreply requesting that the court strike materials that Kische filed in support of its reply brief. (*See* Surreply.) Defendants argue that, pursuant to LCR 7(b)(1), Kische can only file supporting documents with its original

---

interprets Kische's dismissal request to be limited to Defendants' defenses and counterclaims that relate to the despoiled evidence. *See infra* § III.B.4.

[8] In its reply brief, Kische (in a one-sentence parenthetical) "objects to Defendants' expert based on *Daubert*, and moves to strike [Allan] Buxton's declaration." (Reply at 3.) The court will not consider this offhand argument. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) ("It is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (internal citations omitted).

motion because Defendants must have an opportunity to substantively respond to all evidence. (Surreply at 2); *see* Local Rules W.D. Wash. LCR(7)(b)(1).

The Local Civil Rules limit the filing of a surreply. *See* Local Rules W.D. Wash. LCR 7(g). A party "may file a surreply requesting that the court strike" "material contained in or attached to a reply brief." *Id.* The surreply "shall be strictly limited to addressing the request to strike," and "[e]xtraneous argument or a surreply filed for any other reason will not be considered." *Id.* LCR 7(g)(2).

Contrary to Defendants' assertion, the Local Civil Rules expressly contemplate submitting new evidence with a reply brief. *See* Local Rules W.D. Wash. LCR 7(b)(3) ("The moving party may . . . file . . . a reply brief in support of the motion, together with any supporting material of the type described in subsection (1)."). Additional evidence can be presented in support of a reply brief where "[t]he Reply Brief addressed the same set of facts supplied in [respondent's] opposition to the motion but provides the full context to [respondent's] recitation of the facts." *Terrell v. Contra Costa Cty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007). In other words, "[e]vidence submitted in direct response to evidence raised in the opposition is not 'new.'" *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, Case No. 14-CV-1191 JLS (KSC), 2017 WL 4700070, at *3 n.3 (S.D. Cal. Oct. 19, 2017).

Here, Defendants move to strike evidence that they claim is "new" (*see* Surreply): (1) a declaration by Kische's counsel, Dubs Herschlip, that attaches deposition excerpts from Mr. Simsek and Ms. Walker showing that Kische's bookkeeper, Ester Aure, kept passwords on the computers, and that Mr. Simsek order Kische's computers to be

ORDER - 7

decommissioned (12/01/17 Herschlip Decl. (Dkt. # 133)); (2) a declaration from Mr. Mitchell supporting his credibility and expertise (12/01/17 Mitchell Decl. (Dkt. # 134)); (3) an affidavit by Ms. Aure alleging that Mr. Simsek and Ms. Walker had possession and control of Kische's business records and passwords (Aure Aff. (Dkt. # 135)); and (4) a declaration of Mr. Uysal discussing his amount of access to and control over Kische's business records (Uysal Decl. (Dkt. # 136)). The court grants Defendants' motions to strike as to the first and third entries, but denies their motion as to the second and fourth.

Defendants' response does not posit that they did not have access or control over Kische's computers or passwords, nor does it contest that Mr. Simsek decommissioned Kische's computers. (*See generally* Resp.) Therefore, Mr. Herschlip's declaration and Ms. Aure's affidavit constitute improper "new" evidence. *See Terrell*, 232 F. App'x at 628-29. However, Mr. Mitchell's declaration explains his collection methodologies, which Defendants attacked (*id.* at 12), and Mr. Uysal's declaration explains his level of access to and control over Kische's documents, which Defendants raised (*id.* at 10). These declarations are therefore not "new" evidence and are allowed by the Local Civil Rules. *See Terrell*, 232 F. App'x at 628-29, n.2; *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996); Local Rules W.D. Wash. LCR 7(b)(3). Thus, the court strikes Mr. Herschlip's declaration (Dkt. # 133) and Ms. Aure's affidavit for the purposes of this motion (Dkt. #135),[9] but will consider the declarations from Mr. Mitchell and Mr. Uysal (Dkt. ## 134, 136).

---

[9] The court notes that Kische relies on Ms. Aure's affidavit in its response to Defendants' pending motion for summary judgment. (*See* Defs. MSJ Resp. (Dkt. # 138) at 10; Defs. MSJ.)

**B. Spoliation Standard**

Spoliation occurs when a party "destroys or alters material evidence or fails to preserve" evidence when the party is under a duty to preserve it. *Apple Inc. v. Samsung Elec. Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012). A party has a duty to preserve evidence "when litigation is pending or reasonably anticipated." *Moore v. Lowe's Home Ctrs., LLC*, No. C14-1459RJB, 2016 WL 3458353, at *3 (W.D. Wash. June 24, 2016). "Circuit courts describe the duty to preserve evidence as attaching when a party should know that evidence may be relevant to litigation that is anticipated, or reasonably foreseeable." *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1188 (D. Or. 2012) (internal quotation marks omitted). "[W]hen litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

If a party had a duty to preserve evidence and did not, "the court considers the prejudice suffered by the non-spoliator and the level of culpability of the spoliator, including the spoliator's motive or degree of fault." *Moore*, 2016 WL 3458353, at *3.

---

At the time Kische filed its response, it reasonably believed that it could cite to Ms. Aure's affidavit. *See* Local Rules W.D. Wash. LCR 7(b)(1) (allowing a party to rely on facts appearing on the record). Moreover, had Kische known that the court was striking Ms. Aure's affidavit, Kische could have refiled the document with its response. *See id.* LCR 7(b)(2). The court finds that it would be inequitable to strike Ms. Aure's affidavit for Kische's response and will consider the affidavit properly on the record for all purposes moving forward, including to decide Defendants' pending motion for summary judgment. (*See* Defs. MSJ.)

"[A] finding of 'willfulness, fault, or bad faith,'" satisfies the culpability component. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)) (emphasis in original). "There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under [Federal Rule of Civil Procedure] 37 against a party who fails to obey an order to provide or permit discovery." *Id.* at 958.

   1. Duty to Preserve

Kische argues that Defendants' duty to preserve evidence arose on February 8, 2010, when Mr. Simsek signed the Amended Operating Agreement to begin his employment with Kische. (Mot. at 6-7; *see* OA.) In the alternative, Kische argues that the duty arose on October 11, 2013, when Defendants established JD Stellar while still working for Kische, at which point they should have known litigation was reasonably likely. (Mot. at 7-8.) Defendants do not directly address the issue of when their duty to preserve arose, at most saying that Mr. Uysal's previous access to the documents should excuse Defendants' failure to preserve. (Resp. at 4-6, 10-11.)

A duty to preserve evidence did not arise in February 2010 when Simsek signed his Operating Agreement. An employee does not "know that evidence may be relevant to

litigation that is anticipated, or reasonably foreseeable" the moment an employment relationship begins. *PacifiCorp*, 879 F. Supp. 2d at 1188.

Often times a duty to preserve does not arise until a party receives a formal litigation notice, *see, e.g., Knickerbocker v. Corinthian Colls.*, 298 F.R.D. 670, 679 (W.D. Wash. 2014), but of course a duty to preserve can arise before then, *see, e.g., E.E.O.C. v. Fry's Elec., Inc.*, 874 F. Supp. 2d 1042, 1044 (W.D. Wash. 2012) (duty to preserve arose when plaintiff responded to his suspension notice with reference to the Equal Employment Opportunity Commission). Kische sent Defendants its cease and desist notice on September 11, 2015. (*See* 11/10/17 Herschlip Decl. (Dkt. # 117) at 2, Ex. D ("Cease and Desist Notice").) Here, however, the court finds that Defendants' duty to preserve evidence arose when they formed JD Stellar on October 11, 2013. (*See* SAC, Ex. 21.)

On August 9, 2013, Mr. Simsek transferred Kische's warehouse lease to JD Stellar while still acting as Kische's Chief Executive Manager. (SAC ¶ 4.38, Ex. 32 (Dkt. # 75-2) at 31-32.) Two months later, Mr. Simsek formally established JD Stellar, a competing women's clothing company. (11/10/17 Herschlip Decl. at 2, Ex. A at 26:2-27:25 (confirming that Mr. Simsek formed the company in October 2013 and that he and Ms. Walker were the two managers at that time).) And on March 13, 2014, Mr. Simsek executed a trademark assignment of the Marseille mark to JD Stellar. (SAC ¶ 4.35, Ex. 18 at 55; 6/15/17 Herschlip Decl. (Dkt. # 83) at 2, Ex. G at 62:3-8.) All of these actions were in violation of Mr. Simsek's Operating Agreement and took place before Kische's January 2015 cease and desist notice. (*See* OA at 11-13, 23; Cease and Desist Notice; *see*

*generally* 9/6/17 Order.) On this record, to hold that Defendants' duty was triggered only when they received Kische's cease and desist letter would immunize more than a year of Defendants' actions while they established a competing business, syphoned off Kische's assets, and had control of Kische's records and computers. (*See, e.g.*, JSR (Dkt. # 30) at 5.) No later than when JD Stellar was formed on October 11, 2013, Defendants created a situation that made litigation reasonably foreseeable. The court therefore finds that Defendants' duty to preserve evidence arose on October 11, 2013, when Defendants formed their competing business.

### 2. Relevance of Evidence and Prejudice Suffered

The court's prejudice inquiry "looks to whether the [despoiling party's] actions impaired [the other party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (internal quotations omitted). Prejudice exists where the failure to preserve forces the non-spoiling party to "rely on incomplete and spotty evidence at trial." *Id.* (internal quotation marks omitted). Courts have found spoliation where deleted files would likely have been at the heart of the non-spoiling party's case and where they threatened to distort the resolution of the litigation. *See id.* at 959-60 (internal citations omitted). Where emails and documents are missing entirely due to a party's failure to preserve and their relevance cannot be directly ascertained, "a party 'can hardly assert any presumption of irrelevance to the destroyed documents.'" *Id.* at 959 (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982)). Rather, the party that fails to preserve evidence "bear[s] the consequence of [the]

uncertainty" as to the relevance of the documents and the resulting prejudice. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1076 (N.D. Cal. 2006).

According to Mr. Mitchell, only one computer that Mr. Simsek provided to Kische contained QuickBooks files, and "[a]ll of these files were deleted and had to be restored before being examined." (11/10/17 Mitchell Decl. at 2, Ex. E at 1.) The data for many of the deleted files "indicate a remote connection to a computer which [Kische] didn't receive." (*Id.*) Moreover, the deleted files "which were recovered were found to be password protected," and Kische did not receive the passwords. (*Id.*) Furthermore, many of the computers that Defendants provided had already been opened or otherwise severely damaged. (*See* Mitchell Decl. at 2, Ex. A; Ex. D at 4 ("This [computer] damage . . . is greater than I would expect from normal use or even being dropped from a desk.").) Lastly, in January 2014, Defendants hired a company to "[c]hange password[s]," "move [QuickBooks] data files," "plan[] for decommission of Kische server," and "remove am server from [K]ische domain, place in JD [Stellar] workgroup . . ., move two data stores to [JD Stellar] server, create shares and remap[] all clients." (11/10/17 Herschlip Decl. at 2, Ex. L at 2-4.) The invoices for these services were made out to "Dantelle," which is one of Defendants' clothing brands. (*Id.*; SAC ¶ 4.28.)

Defendants do not address most of Mr. Mitchell's findings, claiming instead that his conclusions should not be trusted because he began working on this case as a neutral expert for both parties and because he once provided Defendants with unusable data. (Resp. at 4, 12.) The court finds this reasoning unpersuasive. Without addressing Defendants' pending motion to exclude Mr. Mitchell's opinion and testimony, *see supra*

§ II, the court notes that it does not see how Mr. Mitchell's original role as an agreed-upon expert undermines his credibility. Indeed, the opposite appears to be true: At the beginning of this case, Defendants trusted Mr. Mitchell's methods and expertise. Only now that Mr. Mitchell has uncovered potential wrongdoing do Defendants question his abilities.

Defendants also improperly narrow Kische's claim to arguing that it is missing only irrelevant QuickBooks files from 2009 and 2010. (*See, e.g.*, Resp at 2-3.) Defendants use this narrowed scope to argue that any spoliation is non-prejudicial because 2009 and 2010 are outside the scope of this case. (*Id.* at 8-9.) First, any presumption as to the relevance of the missing documents favors Kische. *Leon*, 464 F.3d at 959. Second, and more importantly, Kische never argues that it is only missing QuickBooks files from 2009 and 2010. (*See generally* Mot.) Rather, although Kische does not list the years for which it is missing files, the court understands Kische's allegation to be that it is missing Quickbooks files for multiple years of its operations up through the time Mr. Simsek and Ms. Walker left the company.[10] (*See id.* at 4 (explaining that Kische is not able to access any of its QuickBooks files).) In addition, Defendants claim that Kische cannot prove when Defendants "last accessed" the deleted files because Mr. Mitchell's restoration changed the files' last accessed date to January 15, 2017, thus covering up when Defendants last accessed them. (Resp. at 8.) But Defendants ignore Mr. Mitchell's exhibit showing the dates that the computers were last

---

[10] Kische's motion and reply are not models of clarity. Before trial, Kische is required to articulate the years for which it is missing QuickBooks files.

ORDER - 14

accessed before Mr. Mitchell restored the deleted records. (*See* Mitchell Decl., Ex. G.) Those last accessed dates include December 2014, October 2015, November 2015, May 2016, and June 2016—all dates between when Defendants formed JD Stellar (triggering their duty to preserve) and when they produced Kische's computers. (*See Id.*; Resp. at 3-4.)

The court finds Defendants' remaining arguments—that they should not be punished for failing to remember 7- and 8-year-old passwords (Resp. at 9); that Mr. Uysal and other bookkeepers had access to the records and, regardless, Mr. Uysal could have ordered an audit of the records at any time (Resp. at 10-11)—similarly unavailing. First, the court does not find spoliation merely because Defendants' cannot remember passwords. Rather, the court finds spoliation based on the entire record before the court, which includes Defendants decommissioning Kische's computers and Mr. Mitchell's testimony regarding deleted files and missing computers. Second, although the court does not place the burden of maintaining documents solely on Defendants, *see Fry's Elec.*, 874 F. Supp. 2d at 1046-47, it is clear that Defendants were chiefly responsible for maintaining Kische's computers and files (*see, e.g.*, JSR (Dkt. # 30) at 5 (Defendants agreeing that they needed to return Kische's computers with business records)).

"In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further that such evidence was adverse to the party that destroyed it." *Apple*, 888 F. Supp. 2d at 993. Here, the relevance of the spoiled evidence, and the prejudice Kische's suffers as a result of the spoliation, is obvious. Without its QuickBooks records, Kische will struggle to prove

damages and causation. (*See* Reply at 6.) For example, Kische will be unable to show how much of its sales came from its Marseille mark, which hurts Kische's claims for statutory and common law trademark infringement. Moreover, Kische's inability to review deleted emails may hurt its claim for intentional interference with business expectancy. (*See, e.g.*, 10/5/17 Mitchell Decl. (Dkt. # 104) at 2, Ex. F at 43 (an email from Ms. Walker to Nordstrom representatives stating that she and Mr. Simsek "are transitioning from Kische to JD Stellar" and that "Kische was a [sic] an internationally owned company that has de[c]ided to take a different direction and will no[] longer be avail[a]ble in the USA").) The prejudice to Kische is highlighted by Defendants' pending motion for summary judgment, which rests on Kische's inability to prove damages and causation. (*See* Defs. MSJ at 6 ("The record is devoid of any facts or evidence that Plaintiff has been quantifiably damaged by the actions of Defendants").) The court therefore finds that Kische has suffered prejudice because Defendants' spoliation of relevant evidence impairs Kische's ability to go to trial and threatens to interfere with the rightful decision in this case. *See Leon*, 464 F.3d at 959.

    3. <u>Culpability of Spoliator</u>

    To support sanctions, Kische must show that the destruction or loss of relevant evidence was accompanied by a "culpable state of mind." *Perez v. U.S. Postal Serv.*, No. C12-0315RSM, 2014 WL 10726125, at *5 (W.D. Wash. July 30, 2014) (internal citation omitted). On the evidence presented, the court finds that Defendants willfully despoiled many of Kische's requested documents through either destroying the evidence or refusing to produce the appropriate user IDs, passwords, or documents. As the court explained

ORDER - 16

above, Defendants should have reasonably anticipated litigation in October 2013 when they opened up a competing business and began assigning Kische's assets to that business. *See supra* § III.B.1. Nonetheless, Defendants last accessed the computers they turned over to Kische on December 2014, October 2015, November 2015, May 2016, and June 2016—after JD Stellar was fully operating, when there was no reason to be accessing Kische's files. (*See* Mitchell Decl., Ex. G.) Most of these dates are even after Defendants' received Kische's September 11, 2015, cease and desist notice. (*See* Cease and Desist Notice.) Defendants also hired a company to decommission Kische's computers in January 2014, a few months after JD Stellar was formed. (11/10/17 Herschlip Decl. at 2, Ex. L at 2-4.)

Defendants argue that their level of culpability is less than the defendant in *Leon*, who admitted to intentionally destroying evidence and creating a computer program to write over the deleted documents. 464 F.3d at 959; (Resp. at 9.) The court recognizes that Defendants have not admitted to despoiling the evidence. Outside that distinction, the court does not see much difference between what occurred in *Leon* and Defendants deleting Kische's QuickBooks files and hiring a company to decommission Kische's computers such that Kische's QuickBooks files are nowhere to be found. Thus, the court finds that Defendants willfully despoiled evidence that they knew was "*potentially relevant to the litigation before they were destroyed.*" *Leon*, 464 F.3d at 959.

4. <u>Appropriate Remedy</u>

Kische asks the court to either: (1) strike Defendants' counterclaims and affirmative defenses that relate to the missing evidence; (2) issue a jury instruction that

the despoiled evidence would have weighed against the Defendants; or (3) order the exclusion of certain evidence. "Courts should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Apple*, 888 F. Supp. 2d at 992 (internal citation omitted). The court will consider Kische's requested remedies in turn.

### a. Dismissal of Defendants' Counterclaims and Affirmative Defenses

Before granting dismissal as a sanction, the court should consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* "[A] district court need not make explicit findings regarding each of these facts." *Id.*

The first and second factor are not particularly important here, although the court again observes that the parties' extensive motions practice is taking up considerable court resources. (*See* 11/29/2017 Order at 8.) The third factor (prejudice) favors Kische, while the fourth factor (disposing of cases on their merits) favors Defendants. There are, however, less drastic sanctions available that are more appropriate than dismissing Defendants' related defenses and counterclaims. (Mot. at 10.) Indeed, Kische concedes this point. (*Id.* at 11. ("Fifth, there are less drastic sanctions available.").) The court therefore will not dismiss Defendants' defenses and counterclaims.

//

//

### b. Adverse Inference Jury Instruction

"A district court's adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386-87 (9th Cir. 2010). A court should exercise its inherent powers with "great restraint and discretion." *Apple*, 888 F. Supp. 2d at 993 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). Although less severe than dismissal, an adverse inference instruction is still a "harsh remedy." *Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI (EDL), 2008 WL 4830752, at *10 (N.D. Cal. Nov. 6, 2008).

Here, in order to ameliorate the risk of prejudice caused by Defendant's destruction of Kische's QuickBooks files and emails, the court will provide the jury with the following adverse inference instruction:

> Ali Simsek, Diane Walker, and JD Stellar have failed to preserve evidence for Kische's use in this litigation after its duty to preserve arose. Whether this fact is important to you in reaching a verdict in this case is for you to decide.

This instruction is nearly identical to the instruction approved in *Apple*, 888 F. Supp. 2d at 995, and appropriately maintains the province of the jury to decide the merits of the case. Further, the court will allow Kische leeway in arguing what information might have been gleaned from the missing documents. *See Fry's Elec.*, 874 F. Supp. 2d at 1047. This is not a carte blanche to make up its missing sales figures. Rather, Kische can, for example, use its existing financial evidence to reasonably extrapolate what its

//

missing QuickBooks documents would have shown. Similarly, Kische can point to existing emails to reasonably explain that there may be more emails on the same topics.

   c. *Exclusion of Evidence*

Kische also asks the court to prohibit Defendants from introducing despoiled or improperly withheld evidence at trial. (Resp. at 12.) This is, of course, an appropriate remedy. Defendants cannot utilize at trial evidence that they currently claim does not exist.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Kische's motion for sanctions and evidentiary inference at trial regarding spoliation of evidence (Dkt. # 116).

Dated this 25th day of January, 2018.

JAMES L. ROBART
United States District Judge